In the Matter of STATEN ISLAND EDISON CORPORATION, Appellant, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

(Argued December 5, 1933; decided January 9, 1934.)

*Nathan L. Miller, Edward C. Bailly, Edward J. Bennett, George M. Le Pine* and *E. B. Naylon* for appellant. The Commission must consent to the long-term refunding of an obligation maturing within one year, which is not reasonably chargeable to operating expense or income, and for the payment of which no funds are available. The Commission's views concerning the wisdom of incurring the debt or the need for capital goods purchased with the proceeds are wholly immaterial. (Cons. Laws, ch. 48, § 69; *Caskie* v. *International Ry. Co.*, 261 N. Y. 47; *Christensen* v. *Eno*, 106 N. Y. 97; *People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1; *People ex rel. Binghamton L., H. & P. Co.* v. *Stevens*, 203 N. Y. 7; *People ex rel. Dry Dock R. R. Co.* v. *Public Service Comm.*, 167 App. Div. 286.)

*Charles G. Blakeslee, John T. Ryan* and *John J. Donohue* for respondents. The petitioner presented no evidence to justify the Commission in authorizing the issuance of the bonds. (*People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1; *People ex rel. Studebaker Corp.* v. *Gilchrist*, 244 N. Y. 114; *Halsted* v. *Globe Indemnity Co.*, 258 N. Y. 176; *Globe Woolen Co.* v. *Utica G. & E. Co.*, 224 N. Y. 483; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553; *Nesbit* v. *Lockman*, 34 N. Y. 167; *Whitehead* v. *Kennedy*, 69 N. Y. 462; *Cowee* v. *Cornell*, 75 N. Y. 91; *Fisher* v. *Bishop*, 108 N. Y. 25; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Butler* v. *Prentiss*, 158 N. Y. 49; *Heckscher* v. *Edenborn*, 203 N. Y. 210; *Chicago, M. & St. P. Ry. Co.* v. *Minn. Civic Assn.*, 247 U. S. 490; *Procter & Gamble Co.* v. *Newton*, 289 Fed. Rep. 1013.) The refusal of the Public Service Commission to permit petitioner to issue bonds for the purpose of refunding the expenditures made by it was proper and in accordance with the statute. (*People ex rel. D. &*

*H. Co.* v. *Stevens,* 134 App. Div. 99; 197 N. Y. 1; *People ex rel. New York Edison Co.* v. *Willcox,* 207 N. Y. 86; *People* v. *N. Y. C. & H. R. R. R. Co.,* 138 App. Div. 601; 199 N. Y. 539.) The Public Service Commission may withhold its consent to the refunding of expenditures which are not in the nature of permanent utility capital. (*People ex rel. Binghamton L., H. & P. Co.* v. *Stevens,* 203 N. Y. 7; *People ex rel. Dry Dock R. R. Co.* v. *Public Service Comm.,* 167 App. Div. 286; *Consolidated Gas Co.* v. *Newton,* 267 Fed. Rep. 231; 258 U. S. 165.)

CRANE, J. The Staten Island Edison Corporation was organized under the Transportation Corporations Law (Cons. Laws, ch. 63) of the State of New York and is engaged in the business of producing and selling to the public electricity for light, heat and power. It is a member of the Associated Gas and Electric System, all of its stock being owned within the system.

On June 16, 1931, the Staten Island Edison Corporation issued and sold $7,500,000 of three per cent gold notes to mature June 15, 1932. Out of the moneys realized, $2,100,000 was used to reduce what the appellant has termed, " open account indebtedness." The balance of the proceeds, $5,321,593.75, was temporarily invested in Associated Electric Company four and one-half per cent bonds, due 1956. These bonds were purchased from the Associated Gas and Electric Company, which owned and controlled both Staten Island Edison Corporation and the Associated Electric Company. These latter two companies were a part of the system of interlocking corporations. The Associated Electric Company is a Delaware corporation, and its bonds purchased were debenture bonds.

On or about the maturity of the notes, June 15, 1932, they were refunded with a 364-day first mortgage bond issue in the amount of $7,424,000. These were issued under the terms of a pre-existing mortgage. As the due date approached, these bonds, like the notes, had to be

met, and it is the method proposed by the Staten Island Edison Corporation of redeeming these bonds that has given rise to this litigation with the Public Service Commission. During the process of this financing certain applications were made to the Commission for leave to meet these bonds by a long-term issue. The petition of the company was from time to time amended to meet the changing conditions, but we may treat the orders of the Public Service Commission as one, as they all have the same effect and are to the same point. The applicant, the Staten Island Edison Corporation, desired to raise the money by a long-term issue of bonds to pay the so-called open account and the one-year bonds which had been issued to meet the one-year notes.

The Public Service Commission denied the application as not coming, in its judgment, within section 69 of the Public Service Law (Cons. Laws, ch. 48), and it is from the affirmance by the Appellate Division that the appeal is taken to this court. The main issue between the contending parties is the power of the Public Service Commission to inquire into the nature and necessity of. the one-year indebtedness, whether notes or bonds. As the proceeds of the $7,500,000 sale of notes were used to pay alleged current open accounts and to buy debenture bonds of petitioner's affiliate, the Commission has taken the position it had the right to inquire as to the necessity for the sale of these notes and the nature of the open account, whether capital or income expenditure; while on the other side, the Staten Island Edison Corporation takes the position that the Commission has no such power; that the so-called open account being a genuine indebtedness for borrowed money, and the Associated Electric Company bonds being a legitimate purchase, the Commission must stop here and go no further; — it has no discretion to refuse consent to the issue of long-term bonds and the sale of them to the public. The principal point naturally centers about the purchase of the bonds of the

Associated Electric Company. We take it from the argument of counsel and from the briefs that it is not questioned, even if not conceded, that to buy bonds of an affiliated Delaware company was not such a utility purpose as would compel the consent of the Public Service Commission to the raising of money for that purpose by the sale of long-term Staten Island Edison Corporation bonds. To meet this situation, therefore, the appellant very frankly has taken the position that under the Public Service Law the Commission in this instance exceeded its power in demanding the nature of the prior indebtedness.

The provisions of section 69 of this law are not as clear and concise as they might be, and by strict interpretation, lend themselves to the forceful argument presented by appellant's counsel. Consideration, however, of the purposes of the law, the objects to be conserved, and the wide gap which would be left for evasion if the appellant's view were adopted, leads us to give to this section a more liberal interpretation. The following is the wording of section 69, so far as applicable: "A gas corporation or electric corporation * * * may issue stocks, bonds, notes or other evidences of indebtedness payable at periods of more than twelve months after the date thereof, * * * when necessary for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations," etc. The emphasis is placed by the appellant upon these last words, " for the discharge or lawful refunding of its obligations." To repeat, in order to make clear the argument, the appellant says these one-year notes or bonds were obligations of the company (and most surely they were), therefore, this section 69 gives the electric corporation the right to issue long term bonds to refund them.

The section, however, does not stop here, and we go on

with the proviso,— the company may issue these more than twelve months' bonds, *provided* the Public Service Commission authorizes it by order. This is the wording: " *   *   * Provided and not otherwise that there shall have been secured from the commission an order authorizing such issue, and the amount thereof, and stating the purposes to which the issue or proceeds thereof are to be applied, and that, in the opinion of the commission, the money, property or labor to be procured or paid for by the issue of such stock, bonds, notes or other evidences of indebtedness is or *has been* reasonably required for the purposes specified in the order, and that except as otherwise permitted in the order in the case of bonds, notes and other evidences of indebtedness, such purposes are not in whole or in part reasonably chargeable to operating expenses or to income."

We start with the fact that the appellant is an electric light company, and, by its charter, organized for the purpose of furnishing electricity, for various purposes, to the people of Staten Island. Its capital must be used in the business. It cannot be used for speculation or private purposes. The directors are personally liable if they squander it. Money borrowed has the same limitations. It goes without saying that, if money borrowed by the company on one-year notes or bonds has not been used for corporate purposes, section 69, just quoted, gives no right to the company or the Public Service Commission to refund the debt by a long term issue. This corporation could have borrowed money " for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations;" which obligations must have been for the purposes just previously enumerated. Therefore, the proceeds of the notes issued by the appellant must have been used within the meaning and purpose of this section

— for utility purposes — as defined by the charter of the company and as enumerated in the above quotation. Borrowing money to buy bonds of an affiliate Delaware corporation is not one of these enumerated purposes. We by no means say that the company could not invest its money or its capital in bonds of its choosing, but we do say that when it desires to refund its debts or obligations, the Public Service Commission has the power to inquire into the purpose for which the obligation was created and to determine whether or not it was for the acquisition of property or the improvement of the plant or distributing system, as above enumerated. Issuing bonds to raise money to buy other bonds is not *necessarily* an obligation within the meaning of this section. Now it is true that the principal received by a sale of bonds, or long term bonds, not being available for immediate use in plant construction or improvements, may have to be invested temporarily and until needed in securities of various kinds. There is nothing illegal or improper in this. Such an investment would not as matter of law indicate that the money raised was not to be used for the purposes stated in section 69.

We have not such a case here, however. We are dealing with the question of *power* in the Commission and not with the question of fact. The Public Service Commission had the power to find out what the $7,500,000 was raised for, and whether it was for the purposes of the company's local business or for some ulterior purpose. We need not review the evidence regarding the price at which bonds of the Associated Electric Company were purchased or the purposes alleged for the purchase. We are asked simply to decide that section 69 gives the Commission no power to investigate beyond ascertaining the validity of the previous obligation. Given the power, the Commission did not, in our judgment, arbitrarily exercise it.

The proviso, as we have above given it, requires the

Commission to find that the money, property or labor to be procured or paid for by the issue of bonds is, or has been, reasonably required for the purposes specified in the order. This is indeed clumsy phraseology. As in this case, the debt to be refunded consisted of yearly notes or bonds. The words of this proviso, applicable, read as follows: " In the opinion of the commission, the money, * * * to be procured or paid for by the issue of * * * bonds * * * is, or has been, reasonably required for the purposes specified in the order." As before stated, we think this section has but one meaning. The purposes for which money raised must be used, whether in the first instance, or, on refunding, are those specified as above given in section 69. The purposes which the Commission must specify in its order are these purposes, and the money which is to be repaid, or, as this proviso has it, " paid for," must have been reasonably required for such purposes. If that were not so what would we have? The counsel for the appellant fairly states that by his interpretation there is a gap in this law not filled by legislation. Certainly this could not have been the intention of the Legislature, as the gap would furnish the opportunity for undoing all that it had done in enacting the Public Service Law. The latter part of section 69 reads as follows: " Such gas corporation or electric corporation may issue notes, for proper corporate purposes and not in violation of any provision of this or of any other act, payable at periods of not more than twelve months without such consent; but no such notes shall, in whole or in part, directly or indirectly be refunded by any issue of stock or bonds or by any evidences of indebtedness running for more than twelve months without the consent of the commission."

Even these short term notes, to be valid, must have been issued for corporate purposes, but something more was required to check the financing of these corporations than private lawsuits to test the validity of note issues.

The public was to be protected in the first instance in the sale of long term bonds. If the Commission were bound, without inquiry, to consent to the refunding of the yearly note or bond, issued under this last provision of section 69, there might never arise any inquiry as to the proper use of the money so raised by the uncontrolled action of corporate officials. The corporation has a free hand in issuing its one-year note or bonds for what it considers corporate purposes. When it comes to refunding, the Public Service Commission steps in and must form its own opinion as to the necessity for this action. The sale must have been reasonably necessary and for a public utility purpose. We feel that in reading section 69 as a whole, this is the intent which the Legislature had in mind, and which it has expressed, although perhaps in a terse and perplexing manner.

As to the $2,100,000 which is said to have been the payment of an open account, we have this objection raised by the Commission: Preferred stock had been sold by the appellant, and it was claimed upon the hearing that the money had been used for new construction — a capital investment. When the notes were sold, $2,100,000 was used to redeem or repurchase the preferred stock. The method of creating the indebtedness is immaterial. The question is, what was the money used for,— a capital investment? Section 69 indicates that the applicant must keep its accounts and vouchers of expenditures in such manner as to enable the Commission to ascertain the purposes for which expenditures were made. The appellant, upon a hearing of this case, produced no such vouchers or accounts. Outside of generalizations, no satisfactory evidence was given as to the use of the $2,100,000. The furthest the witnesses would go was to say that it was a proper inference that the $2,100,000 was traceable to the construction account. The company's accountant, Mr. Fleck, said: " It is the result of transactions between affiliated companies running over a long period of time so that the balance

in the open account at any time is the net result of all the transactions between those companies. The examination of the balance sheet would indicate, however, that the increases in fixed capital have been in excess of any amounts paid in through the sale of securities. It is a proper inference to make that that $2,100,000 odd could substantially, if you could trace dollars, be traced into the fixed capital account of the Company. It is rather involved. For example, on Exhibit 25 you will notice that there was over $3,000,000 proceeds realized from the sale of those $6 preferred stock. Now, all that $3,097,500 were used for new construction. At the time that stock was called in April, 1929, affiliated companies advanced the money with which to call that stock. Now, that $3,000,000 plus advance was really the backbone of the balance in that open account for the last several years. That is the largest single item in the open account. So that I say it is a proper inference to say that the $2,100,000 was, if you could trace dollars, traceable to the construction account."

We cannot find that the Commission acted arbitrarily in failing to give its consent to the refunding of this portion of the debt. The cases which have been cited need not be reviewed. We consider them in harmony with the ruling which is here made, while the statement of the purposes for the Public Service Law and the Commission is here applied and followed. (*People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1; *People ex rel. Binghamton L., H. & P. Co.* v. *Stevens*, 203 N. Y. 7; *People ex rel. New York Edison Co.* v. *Willcox*, 207 N. Y. 86; *People* v. *N. Y. C. & H. R. R. R. Co.*, 138 App. Div. 601; affd., 199 N. Y. 539; *People ex rel. Dry Dock, etc., R. R. Co.* v. *Pub. Serv. Comm.*, 167 App. Div. 286.)

The orders appealed from should be affirmed, with costs.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Orders affirmed.