PUBLIC SERVICE COMMISSION (STATE DIVISION, DEPARTMENT OF PUBLIC SERVICE), Appellant, *v.* NEW YORK AND RICHMOND GAS COMPANY, Respondent.*

Third Department, May 8, 1935.

*Charles G. Blakeslee* [*John J. Donohue* with him on the brief], for the appellant.

*Whitman, Ransom, Coulson & Goetz* [*Jacob H. Goetz, William L. Ransom* and *Edwin D. Kyle, Jr.,* of counsel], for the respondent.

HEFFERNAN, J. The facts in this case are undisputed and the appeal presents but a single question of law for determination.

It is conceded that prior to November 9, 1928, defendant had an authorized capital stock of $4,500,000, consisting of 30,000 shares

*Revg. 151 Misc. 347.

of preferred stock and 15,000 shares of common stock, each having a par value of $100 per share. The preferred stock was entitled to cumulative dividends at the rate of six per cent per annum, payable quarterly, prior to the declaration or payment of any dividends upon the common stock, but had no voting rights for any purpose whatsoever until four successive quarterly dividends had been passed. Upon the occurrence of such event the preferred stock became entitled to one vote for each share until such arrears were paid.

About November 9; 1928, the 15,000 shares of common stock, with a par value of $100 per share, were changed into 150,000 shares of common stock without par value and with a stated value of $10 per share. This change was accomplished pursuant to section 36 of the Stock Corporation Law by dividing each existing share of common stock with a par value into ten shares of common stock without par value. No change was made in the preferred stock.

In January, 1931, defendant, without disturbing the existing preferred stock, again reclassified its 150,000 shares of common stock into 7,500 shares of common stock without par value and 142,500 shares of second preferred stock without par value. Each of these two classes of stock has a stated value of ten dollars per share. The second preferred stock has no voting rights whatsoever, and the 7,500 shares of common stock are the only stock with general voting powers. Defendant did not apply for and did not obtain plaintiff's consent to such reclassification.

Plaintiff instituted this action for a declaratory judgment for the purpose of determining its jurisdiction with respect to such reclassification. In its answer defendant asserts that no order of plaintiff authorizing the reclassification is required. Whether or not plaintiff's consent to the reclassification is essential is the question of law involved.

Plaintiff applied to the court at Special Term for judgment on the pleadings. The learned justice who heard the motion denied the application and dismissed the complaint for failure to state facts sufficient to constitute a cause of action. In arriving at his conclusion the learned justice held that while defendant in reclassifying its stock may be said to have issued new stock, such new stock was not issued for any of the purposes enumerated in section 69 of the Public Service Law, and, therefore, plaintiff's consent to such reclassification was unnecessary.

The pertinent provisions of that section are: "*A gas corporation or electric corporation* organized or existing, or hereafter incorporated, under or by virtue of the laws of the state of New York, *may issue stocks*, bonds, notes or other evidences of indebtedness payable at

periods of more than twelve months after the date thereof, or a receiver of such a corporation, if duly authorized by law, may issue receiver's certificates, *when necessary for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations or for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the corporation not secured or obtained from the issue of stocks, bonds, notes or other evidences of indebtedness of such corporation,* within five years next prior to the filing of an application with the commission for the required authorization, for any of the aforesaid purposes except maintenance of service and except replacements in cases where the applicant shall have kept its accounts and vouchers of such expenditure in such manner as to enable the commission to ascertain the amount of moneys so expended and the purposes for which such expenditure was made; *provided and not otherwise that there shall have been secured from the commission an order authorizing such issue,* and the amount thereof, and stating the purposes to which the issue or proceeds thereof are to be applied, and that, in the opinion of the commission, the money, property or labor to be procured or paid for by the issue of such stock, bonds, notes or other evidences of indebtedness is or has been reasonably required for the purposes specified in the order, and that except as otherwise permitted in the order in the case of bonds, notes and other evidences of indebtedness, such purposes are not in whole or in part reasonably chargeable to operating expenses or to income. * * * *Provided, however, that the commission shall have no power to authorize the capitalization of any franchise to be a corporation nor to authorize the capitalization of any franchise or the right to own, operate or enjoy any franchise whatsoever in excess of the amount (exclusive of any tax or annual charge) actually paid to the state or to any political subdivision thereof as the consideration for the grant of such franchise or right, nor to authorize the issuance of any stocks or other securities in payment of dividends or for any purposes other than those enumerated in this section."* (As amd. by Laws of 1930, chap. 780.)

The effect of the decision under review is that a gas or electric corporation may issue stock for any purpose without the consent of the Public Service Commission so long as such stock is not issued for one of the purposes set forth in section 69 specifically requiring its consent. In the final analysis, as argued by the learned counsel for plaintiff, such a construction of the statute simply means that the Commission has no jurisdiction to pass on the propriety or legality of stock issued by public utility corporations. We do not

believe that this statute should receive such a narrow construction. Very recently the Court of Appeals in *Matter of Staten Island Edison Corp.* v. *Public Service Comm.* (263 N. Y. 209) expressly stated that the identical section with which we are dealing should receive a liberal interpretation. Unquestionably it was the legislative intention in granting to the Commission extensive powers of regulation and supervision to protect not only utility corporations and their stockholders but primarily the investing public. Having in mind the reasons which prompted the enactment of this statute, we believe that a reasonable and fair construction of its provisions justifies the conclusion that no gas or electric corporation may issue stock for any purpose without the consent of the Commission. This view is strengthened when section 69 of the Public Service Law is read in connection with section 69 of the Stock Corporation Law. The latter statute, so far as material here, provides: " No corporation shall issue either shares of stock or bonds, except for money, labor done or property actually received for the use and lawful purposes of such corporation."

As we have seen, to issue stock for " money, labor done or property actually received " a gas or electric corporation must first obtain the consent of the Public Service Commission. Section 69 of the Public Service Law first prohibits gas and electric corporations from issuing any stock without the consent of the Commission and then limits the power of that tribunal in granting such consent to stock issued for those purposes designated in the statute.

We think there can be no reasonable doubt that defendant's reclassification of its stock in January, 1931, constitutes an issue of stock. Defendant filed in the office of the Secretary of State its certificate of reclassification pursuant to section 36 of the Stock Corporation Law. Section 38 of that law contains provisions applicable to proceedings under section 36 of the same law. Subdivision 9 of section 38 provides:

" 9. If shares without par value be changed into a different number of shares of the same class or of any other class or classes without par value, *the corporation shall be deemed to have received for the issuance of such of its shares without par value as represent or take the place of outstanding shares without par value the amount of the capital of the corporation represented by the outstanding shares so changed.* In such case the provisions of the certificate of incorporation relating to the capital of the corporation must be complied with."

This subdivision states, in effect, that if a corporation change shares without par value into a different number of shares of the same class or any other classes without par value, the corporation

shall be deemed as a matter of law (1) to have issued shares of stock, and (2) to have received property for the issuance of such stock.

On the argument and in its brief defendant places great emphasis on the fact that plaintiff made no attack upon the legality of the reclassification which it made of its stock in 1928. Merely because plaintiff remained passive as to the 1928 reclassification in no way estops it from questioning the validity of the present transaction. Defendant contends that in making the 1931 reclassification without plaintiff's consent it did so in reliance upon the decision in *People* v. *Liberty Light & Power Co.* (121 Misc. 424), and urgently insists that its procedure is completely sanctioned by that case. The opinion in that action was written by the learned justice who presided in the instant case. In as much as the question involved in the two cases is not identical, as we shall presently show, we refrain from any expression of opinion as to whether or not the *Liberty* case correctly states the law.

In both the *Liberty* case and in defendant's reclassification of its stock in November, 1928, a mere change in the *form of shares* of stock was made. The substantial rights of the corporation and its stockholders were not affected. The reclassification in January, 1931, presents an entirely different picture. There was not only a change in form but also a change in substance. When the defendant's entire outstanding par value stock was changed in November, 1928, into a different number of shares of no par value stock the capital obligation or financial set-up of the corporation was not altered. The voting power formerly vested in the owners of the 15,000 shares of the company's common stock became vested in the owners of the 150,000 shares of stock in the same concern. Every person was entitled to the same proportional voice in the management of the affairs of the company, and the sale of any one of the shares of new stock was the same as the sale of a tenth of a share of the stock formerly in existence. The management of defendant was still vested in the owners of the stock having a stated value of $1,500,000, constituting about thirty per cent of the entire capitalization of the company.

The reclassification of January, 1931, radically changed the relative amount of capital represented by shares with voting powers and shares without voting power. The 150,000 shares of *voting* stock were converted into 142,500 shares of second preferred stock *without voting power* and 7,500 shares of common stock, *with voting power*. The latter is the only voting stock in defendant. Thus a company with book assets of $7,033,309.72, as shown by the annual report for 1932, is completely dominated and controlled by an interest amounting to less than one and one-tenth per cent of the

assets. Through a series of reclassifications, all accomplished without the consent of plaintiff, defendant has made drastic changes in the preferential rights and privileges of its capital stock. The investors who have contributed practically the entire capital of the corporation have no voice in its management. It is possible by this process of stock manipulation to seriously affect a corporation's integrity, to greatly impair the maintenance of investment security and to permit a wide scope for corporate abuses.

The danger arising from the situation disclosed in this record is apparent. The owners of the so-called preferred stock may dispose of it to the investing public without transferring to the purchasers thereof any voice whatever in the management of the corporation.

We entertain no doubt that the reclassification in question offends against the spirit and intent of the Public Service Law. To hold that the Commission is without jurisdiction in the premises would point the way for utility corporations to foist upon the investing public securities of doubtful value.

The order appealed from is reversed, with ten dollars costs and disbursements, and plaintiff's motion for judgment granted, with costs.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

Order reversed on the law, with ten dollars costs and disbursements, and plaintiff's motion for judgment granted, with costs.