In the Matter of BROOKLYN UNION GAS COMPANY, Petitioner, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, April 13, 1970.

*Sullivan & Cromwell (David W. Peck* and *John F. Arning* of counsel), and *Cullen & Dykman (Edwin F. Russell, Barbara M. Suchow* and *David C. Jones* of counsel), for petitioner.

*Kent H. Brown* and *George E. Kenny* for respondent.

COOKE, J. This is a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission, which denied the petition of the Brooklyn Union Gas Company to issue stock for the purpose of acquiring all of the stock of New Jersey Natural Gas Company, a New Jersey public utility engaged in the distribution and sale of natural gas in that State.

In its decision of November 12, 1969, the commission rejected the application upon the grounds (1) that the proposed acquisition is not in the public interest and (2) that the proposed security issue is not authorized by statute. By a supplemental decision of December 4, 1969, a petition for rehearing and reconsideration was denied and the commission "amplified" the reasons outlined in the initial determination.

Section 70 of the Public Service Law, providing in part that no gas corporation shall acquire the stock of any other corporation incorporated for or engaged in the same or a similar business unless authorized to do so by the commission, mandates that such consent shall not be given " unless it shall have been shown that such acquisition is in the public interest." This court's review of the action of the Public Service Commission, when it decides whether such a stock acquisition is in the public interest, is very limited (cf. *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108; *People ex rel. Woodhaven Gas Light Co.* v. *Public Service Comm.*, 203 App. Div. 369, 370–371, affd. 236 N. Y. 530, affd. 269 U. S. 244). If the commission's determination has any rational basis for the conclusion arrived at, it cannot be held by us to be arbitrary and capricious or an abuse of discretion and the judicial function is exhausted (*Matter of Campo Corp.* v. *Feinberg*, 279 App. Div. 302, 307, affd. 303 N. Y. 995). Given such a rational basis, courts will not substitute their judgment for that of the Public Service Commission regarding the issue of public interest, the determination of which has been committed to the expertise of the commission (*Matter of Grade Crossings [N. Y. Cent. R. R. Co.]*, 255 N. Y. 320, 322; *People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, 88, affd. 245 U. S. 345; *Matter of New York, Ontario & Western Ry. Co.*, 244 App. Div. 664, 666, affd. 271 N. Y. 567).

The proof justified the finding by the commission that the transaction would result in an immediate dilution of earnings available for Brooklyn Union's common stock because of its obligation to pay an annual dividend of $1.75 per share on 2,446,898 shares of preferred stock to be issued and the receipt, in turn, of an equal number of shares of common stock of New Jersey Natural, which in 1968 earned $1.55 a share and paid a cash dividend of $1.00. This would be detrimental to petitioner's stockholders and, if continued, would be adverse to the interests of ratepayers as well. There was no showing that New Jersey Natural, even with assumed growth, would be permitted by the New Jersey regulatory body to earn a greater amount per share than in the past. It is not unreasonable to expect disapproval of higher future dividends in view of New Jersey Natural's high return of 16.5% on equity in 1967 and 16.1% in 1968. Furthermore, under the proposal, it is obvious that a substantial segment of petitioner's assets and operations would be beyond the commission's jurisdiction with no assurance that the New Jersey affiliate will be conducted for the benefit and protection of this State's consumers. New York's commission would have no control over New Jersey Natural's capitalization, purchases and sales of utility property, rates, service or any other phase of its operations. (Cf. *Matter of Rochester Gas & Elec. Corp.* v. *Maltbie*, 258 App. Div. 682, 684–685, affd. 284 N. Y. 626.) On these premises alone, we cannot hold justly that no substantial reason whatever appears in the record to sustain the determination under review. A discussion of the other bases mentioned by the commission is unnecessary.

The determination should be confirmed and the petition dismissed, with costs.

HERLIHY, P. J. (concurring). Sections 69 and 70 of the Public Service Law govern the application of the petitioner for permission to issue stock for the purpose of acquiring the stock of another public utility engaged in the distribution and sale of natural gas. The question presented to the commission, pursuant to section 69, was whether or not the proposed stock issue was for one of the purposes set forth therein. The record contains testimony based upon which it might be inferred that the transaction was for one of the purposes enumerated within section 69. However, the record as a whole also supports the inference that the acquisition of the stock of the New Jersey corporation was for the purpose of securing profits to the petitioner's stockholders and as such, was in the nature of an

" investment ". The acquisition of the stock of another utility for the purpose of acquiring profits of such other utility as a stockholder is not one of the express purposes of section 69 and such a purpose does not appear to be included within section 69 by reasonable construction thereof. The respondent commission found that the transaction proposed resulted in " an ' investment ', and as such, it is not an authorized purpose for which securities may be issued under Section 69." The commission having found that the proposed issuance of stock was for investment purposes and the record containing substantial evidence to support such a finding, this court must affirm its determination. (See *Matter of Brooklyn Union Gas Co.* v. *Public Serv. Comm. of State of N. Y.*, 8 A D 2d 210, affd. 8 N Y 2d 815.)

While the petitioner has presented formidable arguments for acquisition of the New Jersey utility as an investment and as probably advantageous to both utilities, these and other strictly corporate purposes proposed by the petitioner are not of such a *utility* consequence as to overcome the commission's denial of the petition on the ground of public interest.

The limited power of review by the courts as to the determination of Public Service Commission decisions is succinctly set forth by Presiding Justice FOSTER in *Matter of Campo Corp.* v. *Feinberg* (279 App. Div. 302, 307, affd. 303 N. Y. 995): " If the commission's determination has any rational basis that would appeal to a reasonable mind it cannot be held by the courts to be arbitrary and unreasonable. We are not concerned with the economic niceties of the practice which the commission has condemned. We may only determine whether there is any reasonable support in the record for the action taken; or to put it another way in order to annul the order of the commission on the ground that it was arbitrary we should have to say as a matter of law that no substantial reason whatever appears in the record to sustain the order and determination under review."

From a reading of both decisions of the commission, in my opinion, it cannot be stated there was no reasonable rationale for its decision to deny the application.

REYNOLDS, J. (dissenting). The commission denied petitioner's petition on both legal and public policy grounds. In its initial decision of November 12, 1969 the commission stated that " the applicable provisions of the Public Service Law [did not permit the petitioner] to issue its own stock * * * for the purpose of acquiring the *stock* of its proposed subsidiary." (Emphasis included.) Section 69 enumerates five purposes for

which stock may be issued by a public utility. The first of these, "the acquisition of property", would seem normally applicable, but the commission determined that "property" as utilized in section 69 meant solely "utility property" and that "common stock cannot be considered utility property even if it is the stock of a similar utility company."

Subsequently petitioner applied for a rehearing which the commission denied. In doing so the commission, being confronted with numerous prior decisions in which it had authorized stock issues of one utility company for the purpose of acquiring stock of another utility company, "amplified" its original decision to indicate that it felt section 69 did not permit the purchase of stock of utilities "located in *other* states" (emphasis included). I cannot agree. In my opinion the proposed acquisition is legally permissible under section 69. I find no legislative intent in section 69 to proscribe the acquisition of the common stock of an operating utility (*People ex rel. Delaware & Hudson Co.* v. *Stevens,* 197 N. Y. 1, 10–12). Reading sections 69 and 70 *in pari materia,* the word "property" in section 69 must include stock of a similar corporation, for section 70 specifically refers to a corporation acquiring "the stock or bonds of any other corporation incorporated for, or engaged in, the same or a similar business". Nor does the fact the utility to be acquired is an out-of-State utility affect the legality of the acquisition. The commission on previous occasions has authorized the issuance of securities to finance the purchase and construction of physical property outside the State of New York. The fact that here stock, rather than physical property, is involved should not affect the result. The commission's reliance on *Matter of Staten Is. Edison Corp.* v. *Public Serv. Comm.* (263 N. Y. 209) as controlling is misplaced. The determinant issue in the *Staten Is. Edison* case was that the securities to be issued were part of an investment scheme totally unrelated to any of the purposes contained within section 69, and the fact that a foreign utility was involved no more than a mere coincidence. *People ex rel. N. Y. Edison Co.* v. *Willcox* (207 N. Y. 86) is similarly inapposite.

As the majority opinion notes our review of the public interest grounds advanced by the commission is, of course, limited (e. g., *Matter of Campo Corp.* v. *Feinberg,* 279 App. Div. 302, affd. 303 N. Y. 995). The Public Service Commission has been vested by the Legislature with the responsibility of determining the public interest in the area of public utility regulation, and in view of the particular expertise which the commission possesses in the field of utility regulation it must be afforded considerable

latitude in rendering its determinations. However, the commission must have at least some reasonable support in the record for the action taken and, unlike the majority, I find the record in the present case barren of such support.

In its initial decision of November 12, 1969 the commission advanced as reasons why the proposed acquisition was not in the public interest the fact that the acquisition would produce a dilution of the petitioner's earnings which if continued could ultimately have an adverse effect on its ratepayers and stockholders and that allocating the benefits to be derived from the acquisition between the two components would make it more difficult to determine whether the rates of each utility were just and reasonable.

As to the dilution issue, which the majority so heavily relies on, there is no question that with a $1.75 dividend to be paid to the holders of the acquired stock if the $1.55 per share earnings of 1968 on such stock continued, the suggested dilution could occur. However, the use of solely the 1968 earnings as the basis of predicting the long-range adverse results from the acquisition is sheer speculation particularly in view of the only testimony in the record to the effect that the dilution in earnings would be a short-term phenomenon that would soon disappear in the face of the benefits to be derived from the long-term advantages of the acquisition, specifically the projected continued growth of New Jersey Natural. And while I recognize the inherent difficulty in regulating the proposed combined utility, it must be remembered that the primary purpose for which the Public Service Commission was established was " to guarantee to the public safe and adequate service at just and reasonable rates ". (L. 1929, ch. 673, § 3.) Thus its own ease and convenience in regulation must be subordinated to considerations of public benefit and interest in the form of better customer rates and service. Moreover, the commission's fears seem predicated upon the assumption that the New Jersey Board of Public Utility Commissioners is necessarily insensitive to the complexities of two related utilities being subjected to separate regulatory agencies. The fact is, however, that the New Jersey Board was also required to give its consent to the acquisition, which it did, and in doing so specifically took into account the problem of interference with regulatory jurisdiction and found it not to endanger the public interest. In fact, the New Jersey Board, in its decision, acknowledged several ways in which the acquisition would benefit New Jersey customers—the joint purchasing and use of electric data processing, the availability

of a number of special departmental personnel to perform staff functions not generally available to a smaller company, and the special advantages of having an emergency supply of gas. In view of the several advantages the people of the State of New Jersey are likely to derive from such an arrangement, it seems quite unlikely that the New Jersey Board would jeopardize these advantages by placing undue burdens upon the New Jersey utility and, therefore, its New York parent. Finally it should be noted again that the commission has previously permitted the acquisition of a foreign utility without presumably having undue fear of a loss of regulatory control.

In its subsequent amplifying decision the following additional public interest reasons were given: the proposal does not include the merger of the two companies into a single operating unit, therefore the operating economies that would flow from a single operation would not materialize; the employment contracts to keep four of New Jersey Natural's important officials would entail a cost of " duplicate management "; and it was not shown that the potential savings on " water sand " storage, co-ordination of gas supply, physical interconnections, centralized meter repairs and computer operations could not be accomplished without affiliation.

The record, however, does not support the rationale advanced. Rather there is considerable testimony to support the conclusion that economic advantages could be derived from the proposed acquisition with nothing being introduced into evidence which would negate this fact. There is uncontradicted testimony establishing the relationship between growth and lower rates, that no area was left in New York in which the petitioner might expand its operation and, accordingly, the petitioner being faced with no new markets and the necessity of having to replace some existing facilities, was encountering a prospect of higher costs without the prospect of any additional consumers among whom the additional costs could be distributed without having to increase rates. The proposed acquisition, with its proximity to New York, afforded an opportunity for further growth to meet the problem. Nor is there any basis in the record for the commission's anxiety concerning petitioner being saddled with the high costs incident to financing expansion in New Jersey. The growth opportunities of the New Jersey operation are the most attractive feature to petitioner since the addition of new customers will enable it, at least in the long run, to provide more efficient service at relatively low rates. The initial outlay in financing further expansion should, therefore, soon be

recouped with a resulting benefit to all customers of the petitioner. In addition there is evidence that the acquisition would afford petitioner easier access to the securities market. Mr. Edward Lebens, a security analyst for the First Boston Corporation, testified that the merger would also enable petitioner to issue its stock and convertible securities on a more favorable basis, reducing the cost therefor of raising capital, which is a very important consideration to public utilities which are typically heavy investment enterprises.

The commission's suggestion of a merger into a single unit or the development of joint ventures, presumably to simplify its regulation of petitioner's activities, forms no basis for denial of the petition. First, there is no indication in the record of how the burden of regulation would be eased by such alternatives. Moreover, if the proposal is financially sound, as noted the proof in the record suggests, and reasonably calculated to advance the public interest, it is not for the commission to dictate the specific managerial solutions (*People ex rel. Delaware & Hudson Co.* v. *Stevens, supra*).

Finally, the commission alludes to the continuation of the cost associated with an allegedly duplicate management which would result from the employment contracts extended to four New Jersey Natural's important officials. However, not only does the commission's past decisions suggest that this alone is not a crucial consideration, but there is nothing in the record to suggest the incompetency of New Jersey Natural's management and, in fact, the retention of New Jersey Natural's present management was an important consideration to the New Jersey Board of Public Utility Commissioners in extending its authorization of the proposed acquisition.

Accordingly, I find advanced by the commission no basis in law or on the grounds of public interest to support its denial of the petition and its determination should, therefore, be annulled.

HERLIHY, P. J., GREENBLOTT and SWEENEY, JJ., concur with COOKE, J.; HERLIHY, P. J., in a separate opinion in which GREENBLOTT, COOKE and SWEENEY, JJ., concur. REYNOLDS, J., dissents and votes to annul in an opinion.

Determination confirmed and petition dismissed, with costs.