[637 NYS2d 987]

In the Matter of NIAGARA MOHAWK POWER CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, February 29, 1996

APPEARANCES OF COUNSEL

*Swidler & Berlin,* Washington, D.C. *(Edward Berlin, J. Phillip Jordan* and *William J. Mertens* of counsel), and *George M. Pond,* Albany, for petitioner.

*Maureen O. Helmer,* Albany *(Maureen J.M. Ely* of counsel), for Public Service Commission, respondent.

*Read & Laniado, L. L. P.,* Albany *(Howard J. Read, James W. Hulme* and *David B. Johnson* of counsel), for Sithe/Independence Power Partners, L. P., respondent.

*Couch, White, Brenner, Howard & Feigenbaum,* Albany *(Robert M. Loughney, Paul A. Feigenbaum* and *Michael B. Mager* of counsel), for Alcan Aluminum Corporation, respondent.

## OPINION OF THE COURT

Casey, J.

Although these proceedings involve some complex issues, the basis for the proceedings is straightforward. Having formerly

been the exclusive provider of electricity at retail to respondent Alcan Aluminum Corporation, doing business as Alcan Rolled Products Company (hereinafter Alcan), petitioner objects to the approval by respondent Public Service Commission (hereinafter the PSC) of the request of respondent Sithe/ Independent Power Partners, L. P. (hereinafter Sithe) to sell electricity to Alcan at a retail price less than the PSC-approved rate at which petitioner sold electricity to Alcan. The issues raised by petitioner concern the jurisdiction of the PSC to approve Sithe's sale of electricity to Alcan, the procedure followed by the PSC in its approval of the sale and the evidentiary support for the decision to grant certification. The PSC, Alcan and Sithe urge us to reject petitioner's arguments and confirm the determinations.

Pursuant to the Federal Public Utility Regulatory Policies Act of 1978 (hereinafter PURPA), wholesale sales of electricity by a qualified facility are exempt from State regulation. To take advantage of the benefits granted to a qualified facility by PURPA, Sithe began construction of a large, 1,000-megawatt cogeneration facility in Oswego County. The cogeneration process also produces steam, and to obtain qualified facility status under PURPA, Sithe was required to find a host who would use the steam generated by the facility for industrial, commercial, heating or cooling purposes. Alcan agreed to serve as the steam host for Sithe's facility, but only if Alcan could also purchase electricity directly from Sithe at a price significantly less than what Alcan had been paying to petitioner. Sithe also intended to build a recycling facility (hereinafter the Liberty project) which would serve as an additional steam host and to which Sithe would also sell electricity at retail. Sithe claims that it entered into the relevant agreements in reliance upon a prior determination of the PSC which concluded that retail sales of electricity by a qualified facility to its steam host fell within the PURPA exemption and, therefore, were not subject to PSC regulation.

Upon learning of Alcan's agreement with Sithe, petitioner applied to the PSC for a declaratory ruling that Sithe's retail sale of electricity directly to Alcan required a certificate of public convenience and necessity, pursuant to Public Service Law § 68. Concluding that its prior determination regarding its regulation of a qualified facility's retail sale of electricity to a steam host should be limited to the facts of the prior proceeding, the PSC concluded that Sithe's retail sale of electricity to Alcan was subject to PSC regulation and declared that a certificate of public convenience and necessity was required.

Sithe promptly applied for the certificate, which would also encompass Sithe's retail sales to the Liberty project, and the PSC issued an order which established guidelines for the hearing on Sithe's application. After the hearing was completed but prior to the issuance of a final determination, a settlement conference was held on notice to all parties, but no settlement was reached. PSC staff and Sithe thereafter met without notice to the other parties and agreed upon a settlement. PSC staff and Sithe recommended that the PSC adopt the settlement. Petitioner objected on the ground that the settlement had been negotiated in violation of the PSC's settlement guidelines.

The PSC thereafter issued an order which concluded that Sithe's application should be granted, subject to certain conditions, including the requirement that Sithe pay petitioner an equalization fee to offset the impact on petitioner's ratepayers of petitioner's loss of sales to Alcan. The order did not establish the amount of the equalization fee, but solicited comments on that issue from the parties and continued the proceeding. Shortly thereafter, the PSC issued its final determination which granted certification and fixed the amount of the equalization fee. Petitioner's request for a rehearing was denied.

We note that several of the orders challenged by petitioner constitute nonfinal administrative determinations which are not subject to CPLR article 78 review (*see*, CPLR 7801 [1]). Nevertheless, the arguments raised by petitioner can all be considered in the context of the review of the final determination and, therefore, we will ignore the technicality.

■ Petitioner first contends that Sithe's request for a certificate of public convenience and necessity, filed after substantial completion of the facility, was too late and, therefore, the PSC lacked the authority to consider it. Alcan argues that as a result of petitioner's initial application to the PSC for a declaratory ruling that Sithe could not sell electricity to Alcan without the certificate, petitioner is estopped from raising an inconsistent claim in this proceeding (*see generally*, *Hinman, Straub, Pigors & Manning v Broder*, 124 AD2d 392, 393). Inasmuch as an administrative agency such as the PSC has only those powers expressly or impliedly delegated by the Legislature (*see*, *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.*, 69 NY2d 365, 368-369), we are of the view that insofar as petitioner's argument concerns the PSC's subject matter jurisdiction, petitioner is not precluded from raising the issue by its prior inconsistent claim (*see*, *Matter of*

*Poliandro v Poliandro*, 119 AD2d 577, 579, *appeal dismissed* 68 NY2d 908; *cf., Matter of Public Serv. Commn. v Rochester Tel. Corp.*, 55 NY2d 320, 325-326).

Turning to the merits of petitioner's argument, we conclude that the PSC had jurisdiction over the matter and that petitioner's reliance on *People ex rel. Cayuga Power Corp. v Public Serv. Commn.* (226 NY 527) is misplaced. We agree with petitioner that the *Cayuga Power* case involves a question of the PSC's jurisdiction to consider the merits of an applicant's request for a certificate of public convenience and necessity. We disagree, however, with petitioner's claim that the *Cayuga Power* case holds that the PSC lacks jurisdiction to consider any application for the certificate once a facility is constructed. The holding in *Cayuga Power* was based upon the nature of the applicant, not the timing of the application in relation to the construction of a facility.

The applicant in the *Cayuga Power* case was incorporated as a private business, operating only on private property to manufacture electricity for itself and its tenants. It was not required to obtain PSC approval for its private operation and it did not do so. The applicant subsequently amended its certificate of incorporation to broaden its purposes and powers to include the manufacture and use of electricity for public purposes. The applicant then sought the relevant approvals of the PSC for its operation as an electric corporation. The Court of Appeals held that the PSC correctly refused to consider the merits of the application because "[a] corporation organized for private business cannot turn itself by *ex parte* amendment into one organized for public service. * * * There may be dissolution and a new birth. But regeneration is not complete unless with change of heart for the future, there is disavowal of the past" (*supra*, at 533). Thus, because the applicant was not an electric corporation within the meaning of the Public Service Law, the PSC had no authority to consider the merits of the application.

Unlike the applicant in the *Cayuga Power* case, there is nothing in the record to suggest that Sithe was incorporated as a private business and subsequently, by ex parte amendment, sought to operate as a public corporation. To the contrary, it is clear that Sithe is an electric corporation within the meaning

of the Public Service Law (see, Public Service Law § 2 [13]).* Sithe's wholesale sales of electricity are exempt from PSC regulation pursuant to PURPA, but the PSC concluded that the PURPA exemption does not encompass retail sales to a steam host, a conclusion that petitioner does not dispute. Public Service Law § 68 requires an electric corporation to obtain a certificate of public convenience and necessity. As a wholesale seller of electricity, Sithe was exempt from the requirement, but as a retail seller Sithe was not exempt and, therefore, was subject to the requirement. It follows that the PSC had jurisdiction to consider the merits of Sithe's application for the certificate required by the statute.

Public Service Law § 68 requires PSC approval before an electric company begins construction of an electric plant. Petitioner contends that Sithe's application was not filed until after construction of the electric plant had begun. As previously noted, the jurisdictional holding in the *Cayuga Power* case was based upon the Court of Appeals conclusion that the applicant was not an electric corporation. The Court did not hold that an application filed after construction of an electric plant had begun was too late for PSC consideration, and we see no basis to conclude that the preconstruction requirement was intended by the Legislature as a limitation on the PSC's jurisdiction over an electric corporation's operation. If petitioner's argument is correct, Sithe could not obtain a determination on the merits of an application for approval of its retail sales of electricity to Alcan unless it first tore down its electric plant and then applied for approval pursuant to Public Service Law § 68. We decline to construe the statute as requiring such an absurd result, which is significantly different than the corporate dissolution referred to in the *Cayuga Power* case. Accordingly, we reject petitioner's jurisdictional argument.

■ Petitioner next raises two procedural issues. We turn first to petitioner's claim based upon the settlement agreement negotiated by PSC staff and Sithe without notice to other parties, including petitioner. It is undisputed that the settlement was not negotiated in accordance with PSC guidelines. It is

---

* The definition of electric corporation contained in Public Service Law § 2 (13) includes an exception "where electricity is generated by the producer solely from one or more co-generation * * * facilities or distributed solely from one or more of such facilities to users located at or near a project site". Because of the 1,000-megawatt capacity of Sithe's facility, it is not a cogeneration facility within the meaning of the exception (see, Public Service Law § 2 [2-a]).

also undisputed, however, that the PSC did not approve the settlement, but instead issued a determination which resolved the issues on the merits. Petitioner contends that the PSC made the settlement "the cornerstone of its decision on the merits". The record, however, establishes that the PSC treated the proposed settlement as nothing more than an argument or position advanced by the parties and not as the basis for its decision. Petitioner was also given ample opportunity to respond to the proposals contained in the settlement offer before the PSC rendered its final determination.

■ Petitioner's other procedural argument concerns the burden of proof. In its interim determination which set guidelines for the hearing, the PSC stated: "Given the desirability of competition and customer choice in general * * * parties opposing certification bear a heavy burden in proving that [Sithe's] competitive practices compel a departure from the general view of competition and its benefits, and so justify denial of certification rather than the imposition of conditions necessary to assure fairness."

Petitioner claims that the PSC granted certification solely because petitioner failed to meet the burden of proof imposed upon it and, therefore, Sithe was relieved of the burden it should have borne as the applicant (see, State Administrative Procedure Act § 306 [1]). The record does not support petitioner's claim.

Pursuant to Public Service Law § 68, certification can be granted only upon a finding of necessity and convenience for the public service. PSC rules recognize that the burden is on the applicant and that certain factors must be considered in determining public need (see, 16 NYCRR 21.3 [g]). In its final determination, issued November 3, 1994, the PSC expressly concluded that Sithe had met its burden under Public Service Law § 68 and had complied with the relevant rules, including those contained in 16 NYCRR part 21. The "heavy burden" referred to by the PSC's interim orders related only to the narrow issue raised by petitioner's claim that certification should be denied because Sithe had engaged in unfair competitive practices, an issue that did not arise until Sithe first met its burden as the applicant. Inasmuch as petitioner clearly had a full and fair opportunity to present relevant evidence and the PSC's final determination to grant certification is not, as petitioner contends, based only upon petitioner's failure to prove its unfair competition claim, we see no basis to disturb the determination on procedural grounds.

■ Pursuant to 16 NYCRR 21.3 (g) (1) and (2), the adequacy of the existing service provided by petitioner and petitioner's ability and willingness to continue the service are relevant factors in determining the public need for the service proposed by Sithe. In its procedural argument, petitioner contends that the PSC failed to consider these factors and that Sithe failed to submit any evidence regarding the factors. We will consider the argument in the context of the substantial evidence issue.

Evidence in the record demonstrates that the high price for electricity charged by petitioner pursuant to its tariff schedule was adversely affecting Alcan's ability to compete in its marketplace. To remain competitive, Alcan had begun to explore its options to reduce its cost for electricity, which included finding another source, constructing its own power facility or leaving the State. In its final determination, the PSC concluded: "The electricity sales agreement [between Sithe and Alcan] is a vital part of a plan that enables Alcan to continue and expand production at its facility in Oswego and * * * development of the Liberty project contributes to the addition of jobs and economic development in the region. This competitive alternative to [petitioner's] tariff-based offering to Alcan and other efforts made by the utility to retain Alcan enhances customer choice and competitive pricing terms, and precludes a potentially significant loss of a large user of electricity that employs approximately 800 people and contributes substantially to the economic well-being of the region."

Implicit in the PSC's conclusion is the finding that petitioner, with its tariff-based rates, could not meet Alcan's requirements for electricity at a price which would permit Alcan to remain competitive at its existing facility in New York. The PSC's finding of public need is consistent with its own rules and with evidence in the record. Petitioner contends that there is other evidence in the record which the PSC should have relied on to deny certification. The determination clearly fell within the PSC's area of expertise and involved both an interpretation of relevant statutory and regulatory provisions and a weighing of the relevant evidence. In these circumstances, we see no basis to disturb the PSC's determination of public convenience and necessity (*see, e.g., Matter of CNG Transmission Corp. v New York State Pub. Serv. Commn.*, 185 AD2d 671).

■ Petitioner's final argument concerns the evidentiary support for the PSC's decision to condition certification on Sithe's payment to petitioner of an equalization fee having a present net value of $19.6 million. According to petitioner, once the

PSC found that an equalization fee was required, the amount of the fee had to be fixed in the manner urged by petitioner at the hearing because no party presented any evidence as to a different level for the fee. As in the case where the PSC exercises its independent judgment in a rate case, we conclude that "the PSC [was] not limited to data presented at the hearing[ ] and conclusions recommended by the parties at the hearing[ ]" (*Matter of Owners Comm. on Elec. Rates v Public Serv. Commn.*, 194 AD2d 77, 80). The PSC's determination includes a reasoned explanation of the manner in which the amount of the fee was determined. In striking a balance between the full payment of lost revenue margins urged by petitioner and no fee at all, as urged by Sithe, the PSC made a rational determination which we will not disturb.

CARDONA, P. J., YESAWICH JR., PETERS and SPAIN, JJ., concur.

Adjudged that the determinations are confirmed, without costs, and petition dismissed.