In the Matter of LUYSTER CREEK, LLC, Appellant-Respondent, v NEW YORK STATE PUBLIC SERVICE COMMISSION, Respondent-Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. [918 NYS2d 651]—

Peters, J.P.

Following an inquiry by the Queens Borough President as to

whether respondent Consolidated Edison Company of New York, Inc. (hereinafter Con Ed) had any property available for development as an envelope manufacturing facility, petitioner and Con Ed negotiated the sale of a 21.3-acre parcel of Con Ed's property located in the Astoria section of Queens. They subsequently submitted a joint petition to respondent Public Service Commission (hereinafter PSC) seeking approval of the transfer, as required by Public Service Law § 70. By order dated November 25, 2002, the PSC approved the transfer subject to certain conditions. In so doing, it found that, "[b]ased on [petitioner's] intended use for the [p]roperty, the fact that Con [Ed] no longer needs the [p]roperty, the purchase price and resulting net gain, and the terms of the [purchase a]greement," the transfer satisfied the public interest requirement of Public Service Law § 70.

When Con Ed later discovered that petitioner no longer intended to develop the site as an envelope manufacturing facility, it applied to the PSC for a declaratory ruling confirming its understanding that the approval of the transfer was premised upon the development of the property in this manner. Petitioner opposed the application, arguing that the approval was not conditioned upon the property being used or developed in any particular manner. In an April 2007 declaratory ruling, the PSC confirmed that development of the property as an envelope manufacturing facility was an "essential factor" in its 2002 determination that the transfer was in the public interest and, thus, its corresponding decision to grant approval of the transfer.[1]

Petitioner thereafter commenced this CPLR article 78 proceeding seeking to annul the PSC's declaratory ruling. Supreme Court dismissed the petition on the merits, finding that the declaratory ruling was not arbitrary and capricious. These cross appeals ensued.

Petitioner contends that the PSC exceeded its authority to determine whether the transfer was in the public interest by considering and relying upon its impact on economic development in general, rather than limiting its review to the effect of the transfer on utility service and rates. Initially, we reject the PSC's assertion in its cross appeal that petitioner's challenge in this regard is untimely. "A CPLR article 78 proceeding 'must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner' " (*Matter of American Tr. Ins. Co. v New York State Dept. of Motor Vehs.*, 305 AD2d 840, 841 [2003], quoting CPLR 217 [1]; *see*

---

1. The sale of the property was never consummated.

*Matter of Feldman v New York State Teachers' Retirement Sys.*, 14 AD3d 769, 770 [2005]), which occurs when such an administrative determination "definitively impacts and aggrieves" the party seeking review (*Matter of Scott v City of Albany*, 1 AD3d 738, 739 [2003]; *see Matter of Feldman v New York State Teachers' Retirement Sys.*, 14 AD3d at 770). Here, petitioner was not aggrieved by the 2002 order. That order approved the joint petition to transfer the subject property and contained no express provision conditioning the approval on use of the property as an envelope manufacturing facility (*compare Matter of Public Serv. Commn. of State of N.Y. v Rochester Tel. Corp.*, 55 NY2d 320, 324-325 [1982]). It was only upon issuance of the PSC's 2007 declaratory ruling interpreting the 2002 order and confirming that the proposed use of the property was an essential factor in its approval that petitioner was definitively affected and aggrieved (*see Matter of AT&T Communications of N.Y. v Public Serv. Commn. of State of N.Y.*, 231 AD2d 155, 158 [1997], *lv denied* 91 NY2d 803 [1997]). Accordingly, the four-month statute of limitations began to run from the date of the declaratory ruling (*see id.*).

Turning to the merits of petitioner's argument, it is well settled that the PSC possesses not only those powers expressly granted to it by the Legislature, but also those "incidental to its expressed powers, together with those required by necessary implication to enable the [PSC] to fulfill its statutory mandate" (*Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y.*, 69 NY2d 365, 369 [1987]; *see* Public Service Law § 4 [1]; *Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 271 AD2d 35, 39 [2000], *lv denied* 95 NY2d 762 [2000]). Public Service Law § 70 provides, in relevant part, that "[n]o gas corporation or electric corporation shall transfer or lease its franchise, works or system . . . to any other person or corporation . . . without the written consent of the [PSC]." The PSC may grant such approval where the transfer is shown to be in the public interest (*see* 16 NYCRR 31.1; *People ex rel. Iroquois Gas Corp. v Public Serv. Commn.*, 264 NY 17, 20 [1934]).

Here, while the PSC is charged with the responsibility for ensuring that electric and utility corporations furnish services that are "safe and adequate" and charge rates that are "just and reasonable" (Public Service Law § 65 [1]; *see* Public Service Law § 66), and neither the Public Service Law nor the implementing regulations delineate the specific factors the PSC should consider in determining whether a utility's transfer of property is in the public interest, our "realistic appraisal" of this matter leads us to conclude that the PSC is entitled to

consider economic development benefits as part of its public interest analysis (*Matter of Consolidated Edison Co. of N.Y. v Public Serv. Commn. of State of N.Y.*, 47 NY2d 94, 102 [1979]; *accord Matter of New York State Elec. & Gas Corp. v Public Serv. Commn. of State of N.Y.*, 308 AD2d 108, 111 [2003]; *Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 271 AD2d at 39). In 1983, the Legislature amended the Public Service Law to authorize the PSC to identify economic incentive areas and set incentive rates in an effort to encourage economic development in New York (L 1983, ch 626, § 2). Specifically, Public Service Law § 66 (12-b) (a) vests the PSC with the power "to designate as economic incentive areas specific areas in which reduced economic activity, unemployment and underutilization of utility facilities justifies the approval of reduced incentive rates for utility services, . . . [to] authorize special economic incentive rates in such areas . . . [and] to designate or form classes of customers as appropriate for special rates or tariffs, in order to prevent loss of such customers, or to attract new customers where necessary to maintain economic use of utility facilities." The Public Service Law was amended again in 1986, this time authorizing the PSC to set economic development zone rates (*see* Public Service Law § 66 [12-c]). The legislative history reveals that this amendment was part of an economic development program enacted to spur economic development in areas of New York that "failed to participate fully in the economic resurgence and growth of our State" (Governor's Mem approving L 1986, ch 686, 1986 McKinney's Session Laws of NY, at 3186-3187). These provisions of the Public Service Law clearly evince the Legislature's decision to place matters of economic development and impact within the PSC's purview.[2]

Moreover, this Court has determined that the PSC is authorized to consider economic development benefits, including the potential for job loss and the economic well-being of the region, in both the context of rate setting and the granting of certificates of public convenience and necessity (*see Matter of New York State Elec. & Gas Corp. v Public Serv. Commn. of State of N.Y., supra; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y.*, 218 AD2d 421 [1996]). Indeed, in *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y.* (*supra*), we upheld the PSC's finding of "public

---

2. Additionally, Public Service Law § 5 (2) provides that "[t]he [PSC] shall encourage all persons and corporations subject to its jurisdiction to formulate and carry out long-range programs, individually or cooperatively, for the performance of their public service responsibilities with economy, efficiency, and care for the public safety, the preservation of environmental values and the conservation of natural resources."

need" based on its record-supported conclusion that the granting of a certificate of necessity "contributes to the addition of jobs and economic development in the region[,] enhances customer choice and competitive pricing terms, and precludes a potentially significant loss of a large user of electricity that employs approximately 800 people and contributes substantially to the economic well-being of the region" (*id.* at 429). In so doing, we noted that the PSC's "determination clearly fell within [its] area of expertise and involved both an interpretation of relevant statutory and regulatory provisions and a weighing of the relevant evidence" (*id.*).

In our view, consideration by the PSC of the economic impacts of a utility's transfer of its property in determining whether such a transfer serves the public interest reasonably promotes the objectives of the Public Service Law (*see Matter of New York State Elec. & Gas Corp. v Public Serv. Commn. of State of N.Y.*, 308 AD2d at 114). Thus, in light of the foregoing, we find that the PSC was empowered to consider economic development benefits, including job loss or creation, in determining whether the transfer is in the public interest.

Petitioner next argues that the PSC's 2007 declaratory ruling essentially rewrote its 2002 transfer order and, therefore, was arbitrary and capricious. More specifically, petitioner contends that the PSC improperly interpreted the text of the 2002 transfer order and placed undue emphasis upon the type of development that was to be made of the subject property, which was not a significant factor in the first instance.

Determinations of the PSC are to be accorded deference and " 'may not be set aside unless they are without [a] rational basis or without reasonable support in the record' " (*Matter of Keyspan-Ravenswood, Inc. v Public Serv. Commn. of State of N.Y.*, 7 AD3d 837, 838 [2004], quoting *Matter of Rochester Tel. Corp. v Public Serv. Commn. of State of N.Y.*, 87 NY2d 17, 29 [1995]; *see Matter of Brooklyn Union Gas Co. v Public Serv. Commn. of State of N.Y.*, 34 AD2d 71, 72 [1970]). Where such a rational basis exists, we "will not substitute [our] judgment for that of the [PSC] regarding the issue of public interest, the determination of which has been committed to the expertise of the [PSC]" (*Matter of Brooklyn Union Gas Co. v Public Serv. Commn. of State of N.Y.*, 34 AD2d at 72). Here, we find both a rational basis and adequate record support for the PSC's conclusion that the development of the property as an envelope manufacturing facility was an "essential factor" in its 2002 determination that the transfer was in the public interest (*see Matter of Indeck-Yerkes Energy Servs. v Public Serv. Commn. of State of N.Y.*, 164 AD2d 618, 622-623 [1991]).

The PSC's transfer order identifies and discusses several factors upon which its public interest finding was based. Among these factors were petitioner's intended use of the property as an envelope manufacturing facility, the reasonableness of the purchase price and resulting net gain to Con Ed, the fact that Con Ed no longer needed the property, and the terms of the parties' purchase agreement. The impetus for this transaction was that the subject property would be developed as an envelope manufacturing facility, and petitioner and Con Ed represented to the PSC (as well as the New York City Industrial Development Agency which was the lead agency for purposes of the State Environmental Quality Review Act) that the property would be developed as such. Notably, in the joint petition, the parties urged the PSC to approve the transfer as in the public interest based upon the fact that it would foster economic development in the area and result in increased employment and related economic activity in Queens. Moreover, in its order, the PSC stressed that the intended envelope manufacturing facility would relocate approximately 360 current employees to the facility and create 100 new jobs, and that "[t]he petition contains a letter of support from the Queens Borough President, urging the [PSC] to approve the transaction" based upon economic development benefits. Contrary to petitioner's contention, the record supports the PSC's conclusion that the financial terms of the transaction alone were not adequate to support the public interest finding, and that it was only when the transfer price and economic development benefits of the proposed envelope manufacturing facility were collectively considered that it found the transaction to be in the public interest. Accordingly, a rational basis exists in the record for the PSC's declaratory ruling that development of the property as an envelope manufacturing facility, with its concomitant job growth and economic development attributes, was an essential factor in its determination that the transfer was in the public interest and, as such, the determination will not be disturbed (see Matter of Indeck-Yerkes Energy Servs. v Public Serv. Commn. of State of N.Y., 164 AD2d at 622-623).

Finally, despite petitioner's assertion to the contrary, we find no error in the PSC's refusal to consider the affidavit of Angelo Acquista, petitioner's vice-president, regarding the new development plans for the subject property. The purpose of the PSC's declaratory ruling was to construe the prior 2002 transfer order, not to consider whether a new or different transaction should be approved. As noted by the PSC, the affidavit constituted extraneous material outside of the record before the PSC at the time it issued the decision being reviewed and, as such, was ir-

relevant to its interpretation of the prior order.[3] The parties' remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be without merit.

Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

**3.** Certainly, if petitioner and Con Ed are able to reach a new agreement, upon reapplication for approval of the transfer the PSC may consider Acquista's affidavit as well as any other evidence that petitioner wishes to submit tending to support a finding that the transfer continues to be in the public interest.