JOYCE BERLOW, Appellant, v. NEW YORK STATE THRUWAY AUTHORITY, Respondent.

RICHARD BERLOW, Appellant, v. NEW YORK STATE THRUWAY AUTHORITY, Respondent.

Third Department, December 15, 1970.

*Robbins, Galton & Bondi (David S. Galton* and *Kenneth Dubroff* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (Kenneth J. Connolly* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, P. J. These are appeals from orders of the Court of Claims, entered on December 9, 1969, which granted the State's motions to dismiss the claims.

The appellants were involved in a two-car collision on the New York State Thruway and thereafter reached a settlement with the driver of the other car and signed a release absolving

the other driver of all further claims as to the accident. The release did not contain a reservation of rights against the State and the claims involved herein were first instituted by the filing of notices of intention to file claims on or about October 10, 1967. Apparently after the notices of intention to file claims were filed, the appellants instituted an action against the owner and operator of the other vehicle in Supreme Court and the afore-mentioned release was given on June 15, 1968 for the purpose of settling that action with the insurance carrier of the defendant therein. On or about July 24, 1969 the actual claims or notices of claim were filed on behalf of the appellants pursuant to the original notices of intention. The action against the other driver and the actions against the State are all predicated upon negligence which caused the two-car collision and resultant injuries to the appellants.

The State moved to dismiss the claims upon the ground that the release given to the other driver was a release to its joint tort-feasor and therefore, as a matter of law, the said release constituted a full recovery for all damages suffered by the appellants as a result of the accident and thus there are no remaining causes of action against the State (*Milks* v. *McIver,* 264 N. Y. 267). The trial court granted the motions and the appeal hereto raises a question of law as to the effect of the general release given in this case.

The Court of Appeals in its most recent case upon this subject (*Derby* v. *Prewitt,* 12 N Y 2d 100) held that where such a release is given to a tort-feasor whose liability would extend for all personal injuries, the question of whether or not it also releases a subsequent tort-feasor whose negligence compounded the same personal injuries with the result that he would also be liable for the resultant conditions of the original injuries, presented issues of fact as to the intention of the injured persons to release the subsequent tort-feasor. It does not appear that the court in the *Derby* case was discarding the common-law theory that a release of a tort-feasor in cases involving the concurrent negligence of joint tort-feasors would be as a matter of law a release of all joint tort-feasors (cf. *Lucio* v. *Curran,* 2 N Y 2d 157; *Plath* v. *Justus,* 33 A D 2d 833). However, a comparison of the *Derby* and the *Milks* cases leaves no doubt that there has been a liberalization insofar as the strictness of the common-law rule is concerned.

In addition to calling our attention to the fact that the courts have at least to some extent ameliorated the strictness of the common-law rules as to releases given to one of several joint

tort-feasors (*Derby* v. *Prewitt, supra*; *Lucio* v. *Curran, supra*; *Plath* v. *Justus, supra*) the appellants rely upon the express provisions of article 15 of the General Obligations Law.

Title 1 of this article is derived from section 231 *et seq.* of the former Debtor and Creditor Law which was repealed effective September 27, 1964. Section 15–101 (all statutory references hereafter are to the General Obligations Law unless otherwise indicated) defines an obligation as including a liability in tort and expressly defines an obligee as including " a person having a right based on a tort." Upon its face, the definition would not require that the amount of the obligation be liquidated or reduced to judgment in order to be an obligee (cf. *Rector, etc., St. James Church* v. *City of New York,* 261 App. Div. 614, 617; *Bossong* v. *Muhleman,* 254 App. Div. 738; *Warner* v. *Brill,* 195 App. Div. 64). Section 15–102 provides that a judgment against a joint and/or several obligors does not discharge a co-obligor who is not a party to the proceeding. Section 15–103 provides that the amount received by the obligee from one of joint and/or several obligors is generally to be credited on the obligations of all co-obligors. Section 15–104 relates to the release or discharge of a joint and/or several co-obligors and provides in the absence of an express written reservation of rights against the co-obligors, such release or discharge " shall discharge co-obligors only to the extent provided in section 15–105." Section 15–105 provides for the extent to which the satisfaction of a co-obligor's obligation will satisfy the entire obligation of the co-obligors jointly. The remaining sections of title 1 have no applicability to the instant facts.

The Court of Appeals has apparently never passed upon the precise meaning of title 1 of the General Obligations Law or the prior same provisions of the Debtor and Creditor Law as determining the legal effect of a general release or discharge given to one of several and/or joint tort-feasors. (Cf. *McNamara* v. *Eastman Kodak Co.,* 232 N. Y. 18, 35, 36, decided prior to the inclusion of joint tort-feasors as obligors.) The Second Department has apparently limited the effect of the statutory provisions to those cases where the damages arising out of the joint tort are liquidated or there is a reservation of rights (*Rector, etc., St. James Church* v. *City of New York, supra*; cf. *Bossong* v. *Muhleman, supra*).

As discussed hereinabove the statutory provisions are not limited merely to situations involving a liquidated amount of damages. In the case of *Bundt* v. *Embro* (48 Misc 2d 802, mod. 27 A D 2d 931, affd. 21 N Y 2d 1032) the Court of Appeals

affirmed without opinion a determination *that the satisfaction of a judgment* showing '' a satisfaction of damages '' obtained separately against one of several joint tort-feasors for damages resulting from the concurrent negligence of the several joint tort-feasors bars a separate action against the remaining joint tort-feasors for the injuries resulting from the concurrent negligence.

It does not appear that the statutory provisions herein under consideration would permit an obligee to commence further proceedings where his damages have been reduced to a liquidated sum by judgment and the judgment has been entirely satisfied. (See § 15–103.) (See *Bundt* v. *Embro, supra.*)

In the present case there is no showing that the amount of the damages suffered by the appellants has ever been reduced to a liquidated sum by the securing of a judgment. If in fact the appellants had agreed with the State's joint tort-feasor that the amount being paid for the release of said joint tort-feasor represented the full extent of their damages, the payment of such sum to the appellants would mean that the general obligation had been satisfied in full and that the appellants would have no cause of action as against the State or any other concurrent joint tort-feasor. (See § 15–103.) (See *Derby* v. *Prewitt, supra.*)

In view of the provisions of the General Obligations Law as to the effect of a release, the motion to dismiss upon the ground that the general release also released the State should have been denied; and the question of fact as to whether or not the payment by the joint tort-feasor and the concurrent release represented a payment of *all* damages and a satisfaction in full for the results of the concurrent negligence remains open.

The orders appealed from should be reversed, on the law and the facts, and the motions denied, with costs.

GREENBLOTT, J. (concurring). I concur with the majority in reasoning and result. However, I urge as a further ground for reversal, that the antiquated rule that a general release to one tort-feasor without reservation creates a bar to an action for damages against another tort-feasor, arising from the same injury, be abolished in this State. We should not blindly follow an archaic rule which no longer has any basis in fact or law. As Oliver Wendell Holmes said: '' It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long

since, and the rule simply persists from blind imitation of the past.'' (*The Path of the Law,* 10 Harv. L. Rev. 457, 469 [1897].)

This rule has come under strong attack by the courts, State Legislatures and legal authorities. Although, in its most recent consideration of the rule, the New York Court of Appeals (*Derby* v. *Prewitt,* 12 N Y 2d 100) did not find it necessary to consider the common-law rule for it found that the taxicab driver and physician had not acted in concert nor contributed concurrently to the same wrong and were hence not joint tort-feasors, nevertheless, references to the many attacks upon the rule and dicta seem to me to imply disapproval of the rule.

Other jurisdictions have attempted to prevent the hardships caused by the common-law rule. The Legislatures of 19 States have enacted the Uniform Contribution Among Tort-feasors Act of which the Pennsylvania statute is typical: '' A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.'' (Pa. Stat. Ann., tit. 12, § 2085.)

The courts of many other jurisdictions have also abrogated the common-law rule. For example, in *Breen* v. *Peck* (28 N. J. 351, 356) the court stated: '' The rule was evolved when metaphysics rather than justice was the dominant factor and obviously tends to defeat the fair expectations and intentions of the parties to the release; it may be noted that all but one of the continental legal systems have flatly rejected it.''

The text writers have joined the attack on the common-law rule. Dean Prosser states: '' The only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it. If the statutes are taken into account, this is now the rule actually applied in some two-thirds of the American jurisdictions.'' (Prosser, Law of Torts [3d ed.], § 46, p. 272.)

Williston points out: '' The clear trend of the law is to hold that an agreement releasing one joint tortfeasor must be construed in accordance with the intention of the parties. It is generally agreed that if the document shows on its face that it was not the intention of the injured party to relinquish his claim against the other joint tortfeasors, as where he expressly

reserves his right of action against them or when it appears that the payment he received was not accepted as full satisfaction, it will be regarded as a covenant not to sue, no matter what its form." (2 Williston, Law of Contracts [3d ed.], § 338A.)

The reasons for the rule were succinctly stated by now Chief Judge Fuld in *Derby* v. *Prewitt* (12 N Y 2d 100, 105, *supra*): " The ancient rule, on the contrary, rests upon two grounds: the first, that the injury resulting from the joint action of the wrongdoers is a single injury and constitutes basis for a single cause of action * * * the second, that it must be presumed that a settlement with one of the joint tortfeasors represents a full satisfaction of the entire claim and that any further recovery would involve double compensation for the same injury."

The two reasons for the rule have no application to modern day circumstances. That there may be but a single cause of action or that the settlement presumes full satisfaction of a claim, ignores the realities of the situation and the intent of the parties. The jury should be permitted to determine what constitutes full satisfaction of a claim and the nonsettling tortfeasor should be entitled only to a credit of the amount received by the plaintiff.

I would hope that the ancient rule will be laid to rest in this State and in its place the rule be adopted that an agreement releasing one joint tort-feasor must be construed in accordance with the intention of the parties by the trier of the facts upon trial.

Reynolds, J. (dissenting). The majority of this court would by their decision discard the long-standing and well-established rule that a general release of one tort-feasor without reservation creates a bar to an action for damages against another tort-feasor, arising from the same injury (*Milks* v. *McIver,* 264 N. Y. 267). I cannot concur in this action. First, I cannot agree that the provisions of article 15 of the General Obligations Law mandate such a result. The Court of Appeals has not indicated that such a construction be given to article 15 despite the fact that this legislation has been part of our statutory law since 1928 (former Debtor and Creditor Law, §§ 231–235; L. 1928, ch. 833) some six years before the decision in *Milks* v. *McIver* (*supra*). Nor does the Court of Appeals even mention this legislation in its decision in *Derby* v. *Prewitt* (12 N Y 2d 100). Moreover, the Second Department, the only appellate court in this State to meet this issue, has directly ruled that

these sections are inapplicable " where the damages arising out of tort are unliquidated and the release contains no reservation ". (*Rector, etc., of St. James Church* v. *City of New York,* 261 App. Div. 614, 617; see, also, *Rushford* v. *United States,* 92 F. Supp. 874.) Nor can I agree with the position that the judicial trend in this State portends the overruling of this well-established principle. The Court of Appeals chose not to do so in *Derby* v. *Prewitt* (*supra*) (see, also, *Lucio* v. *Curran,* 2 N Y 2d 157) and instead carefully distinguished the facts so as not to confront the rule directly. And I fail to understand the compelling urgency to effect the demise of such a well-established rule since every practitioner should unquestionably be aware of it and its application can be so easily voided by including a reservation in the release. Accordingly, I vote to affirm the order of dismissal of the Court of Claims.

COOKE and SWEENEY, JJ., concur with HERLIHY, P. J.; GREEN-BLOTT, J., concurs in a separate opinion; REYNOLDS, J., dissents and votes to affirm in an opinion.

Orders reversed, on the law and the facts, and motions denied, with costs.