Reginald R. GARNER, Plaintiff,

v.

WYETH LABORATORIES, INC. and Wyeth Laboratories Division of American Home Products Corporation, Defendants.

Anita C. GARNER, Plaintiff,

v.

WYETH LABORATORIES, INC. and Wyeth Laboratories Division of American Home Products Corporation, Defendants.

Civ. A. Nos. 82–0629–1, 82–0628–1.

United States District Court,
D. South Carolina,
Charleston Division.

March 31, 1984.

W. Ralph Garris, Columbia, S.C., for plaintiffs.

Joseph H. McGee, Burnet R. Maybank, III, Charleston, S.C., for defendants.

## ORDER AND JUDGMENT

HAWKINS, District Judge.

These companion product liability actions came on for hearing before the court on January 25, 1984, upon the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs, Anita C. Garner and Reginald R. Garner, are husband and wife. The defendants, Wyeth Laboratories, Inc. and Wyeth Laboratories Division of American Home Products Corporation, are the manufacturers and distributors of the birth control pill, Ovral. Mrs. Garner used Ovral from 1974 to 1976.

The plaintiffs' complaints, which sound in negligence, strict liability in tort, breach of warranty, and fraud, allege that as a result of defendants' failure to properly test, manufacture and label Ovral, Anita Garner suffered two major heart attacks. They seek actual and punitive damages. The defendants move for summary judgment on the ground that the doctrine of satisfaction is a complete defense to all plaintiffs' theories. For the reasons stated below, this court holds that satisfaction is a complete defense. Therefore, the defendants' motion for summary judgment should be granted.

These actions were instituted on March 30, 1982. The plaintiffs filed amended complaints on April 19, 1982, which added Wyeth Laboratories Division of American Home Products Corporation as a party defendant. The defendants answered the complaints on May 28, 1982. On August 8, 1983, the defendants filed a motion for summary judgment. As a result of a previous lawsuit between the plaintiffs and the United States of America, defendants argue that complete satisfaction in the amount of $215,000.00 was received for the injuries which form the basis of the present lawsuit. Alternatively, they assert that the plaintiffs' theories of negligence, strict liability in tort, breach of warranty, and fraud also fail as a matter of law. At the January 25th hearing, counsel for plaintiffs and defendants agreed to reserve argument on

the alternative grounds for summary judgment and have the court consider only the defense of satisfaction.

Both lawsuits are premised upon conduct which took place in the early 1970's. Mr. and Mrs. Garner, as retired Army personnel, were living in Richland County, South Carolina. The United States of America operates Moncrief Army Hospital at Fort Jackson, South Carolina. This hospital provides medical services for retired military personnel such as the Garners.

Mrs. Garner smoked, was overweight, had high blood cholesterol and a family history of cardiovascular disease. In 1970 she began taking medication for hypertension because she suffered from high blood pressure. Despite her medical condition, she continued to smoke and did not lose weight.

Mrs. Garner became pregnant in 1974. A spontaneous abortion caused her to be admitted to Moncrief Army Hospital on September 7th of that year. When she was discharged from the hospital's obstetrical-gynecological clinic, Mrs. Garner received a one-year prescription for Ovral, which was subsequently renewed. At that time, the Army doctor advised her that if she suffered any side effects, she should return to the clinic.

Unaware that Ovral could further elevate her blood pressure, Mrs. Garner did not have it monitored on a regular basis after she began taking the contraceptive. On May 7, 1976, she suffered a severely disabling myocardial infarction. She also alleges that she experienced congestive heart failure on September 27, 1976.

Mrs. Garner and her husband filed companion medical malpractice actions against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The case was tried without a jury on July 17 and 18, 1980. Because of Mrs. Garner's medical history, plaintiffs claimed that the defendant was negligent in prescribing Ovral to her and in not monitoring her blood pressure. United States District Judge Robert F. Chapman agreed with the plaintiffs. He found the doctor's

negligence in prescribing Ovral and in not monitoring her blood pressure to be the proximate cause of her May 7th heart attack. He issued an order in favor of Mrs. Garner for $175,000.00 and for Mr. Garner in the amount of $40,000.00. These judgments were satisfied except for costs.

## SATISFACTION

■ This court sits as a South Carolina court in this diversity action and, therefore, looks to South Carolina substantive law for authority. *Stanback v. Parke, Davis and Company,* 657 F.2d 642 (4th Cir.1981).

■ The defendants rely on a simple hornbook proposition: a plaintiff is entitled to but *one* compensation for his loss. This rule, which is equitable in nature, is designed to prevent an injured party from recovering twice for the same injury. Since the plaintiffs fully litigated and received compensation for all compensable injuries, the defendants conclude that they are barred from filing a second suit premised upon the same injuries.

The plaintiffs attempt to evade this defense by relying on Restatement (Second) of Torts § 886 (1979). It provides that "[t]he discharge of a judgment against one of several tortfeasors each of whom is liable for a single harm is treated like a release or a covenant not to sue given to one of several tortfeasors for a claim not reduced to judgment."

Plaintiffs argue that under this rule they are not precluded from bringing a second action against different defendant tortfeasors. In the event, however, that they prevail and recover a judgment, plaintiffs concede that defendants are entitled to a credit of $175,000.00 and $40,000.00 in their respective actions.

■ Counsel for all parties agree that the South Carolina Supreme Court has not considered the question of whether or not to adopt § 886. In the absence of controlling law, this court must attempt to predict the determination that the state Supreme Court would reach on the question. *Qui-*

nones v. United States, 492 F.2d 1269 (3d Cir.1974); William Randall Phillips v. United States of America, 508 F.Supp. 537 (D.S.C.1980).

The law in South Carolina is unequivocal on the issue of satisfaction. A plaintiff may have but one satisfaction for a wrong done. Truesdale v. South Carolina Highway Department, 264 S.C. 221, 213 S.E.2d 740 (1975); National Bank of Savannah v. Southern Ry., Carolina Division, 107 S.C. 28, 91 S.E. 972 (1917).

At common law, the release of one joint tortfeasor released all other joint tortfeasors. W. PROSSER, LAW OF TORTS, § 49 (4th ed. 1971). This was true regardless of parties' intentions. It was also the rule in South Carolina. National Bank of Savannah v. Southern Ry., Carolina Division, 107 S.C. 28, 91 S.E. 972 (1917).

Today, however, covenants not to sue and releases receive different treatment than do satisfied judgments. In Bartholomew v. McCartha, 255 S.C. 489, 179 S.E.2d 912 (1971), the South Carolina Supreme Court altered the common law rule governing the effect given to a release or a covenant not to sue. "[T]he release of one tort-feasor does not release others who wrongfully contributed to plaintiffs injuries unless this was the intention of the parties, or unless plaintiff has in fact received full compensation amounting to a satisfaction." 255 S.C. at 492, 179 S.E.2d at 914. An injured party is not precluded from bringing a subsequent action merely because one tortfeasor obtained a covenant not to sue or a release. An amount paid by one tortfeasor in consideration of a covenant not to sue or a release is regarded as satisfaction, pro tanto, so as to reduce the amount of damages-recoverable against other tortfeasors. Powers v. Temple, 250 S.C. 149, 156 S.E.2d 759 (1967); McWhirter v. Otis Elevator Co., 40 F.Supp. 11 (D.S.C. 1941).

Notwithstanding the more liberal rule governing releases and covenants not to sue, satisfied judgments obtained as a result of a single injury prevent subsequent lawsuits. Pendleton v. Columbia Ry. Gas and Electric Co., 133 S.C. 326, 131 S.E. 265 (1926). An injured person can sue any one or all of several tortfeasors whose negligent acts or omissions unite to produce an injury. Tortfeasors may be sued separately and a judgment rendered against each. If this is the case, the plaintiff must elect which judgment to collect. It is clear, however, that a plaintiff is entitled to only one satisfaction. Once a judgment is satisfied, the injured party is precluded as a matter of law from bringing another action. National Bank of Savannah v. Southern Ry., Carolina Division, 107 S.C. 28, 91 S.E. 972 (1917); Accord Atlantic Coast Line Railroad Company v. Whetstone, 243 S.C. 61, 132 S.E.2d 172 (1963); Camp v. Petroleum Carrier Corp., 204 S.C. 133, 28 S.E.2d 683 (1944).

The plaintiffs argue that if the South Carolina Supreme Court was presented with this case it would extend the rule adopted in Bartholomew v. McCartha, 255 S.C. 489, 179 S.E.2d 912 (1971), to give satisfied judgments the same treatment as releases and covenants not to sue. This is the rule reflected in Section 886 of the Restatement (Second) of Torts. The Garners also contend that the damages sought in the instant actions are different from those recovered in the previous ones because punitive damages cannot be recovered against the United States under the Federal Tort Claims Act.

It is true that the South Carolina Supreme Court has not had occasion to reconsider the effect of a satisfied judgment since it adopted the more liberal rule regarding covenants not to sue and releases. Notwithstanding the Bartholomew decision, this court is of the opinion that the South Carolina Supreme Court would not adopt Section 886 on the facts of this case.

The common law rule of unity of discharge of tortfeasors developed in cases where there had been a release of one wrongdoer. It was based upon two grounds: the first, that the injury resulting from joint action of the wrongdoers is a single injury and constitutes basis for a

single cause of action; the second, that it must be presumed that a settlement with one of the joint tortfeasors represents full satisfaction of the entire claim and further recovery would amount to double compensation.

Under this rule, an injured person who released a tortfeasor was barred from suing a second tortfeasor even though compensation in fact was not received for subsequent or unknown injuries. This rule had particularly harsh results when applied to medical malpractice suits arising out of an earlier automobile accident.

Typically, there was an automobile collision. The injured party obtained compensation by release or a judgment from the driver who was guilty of negligence. As a result of the accident, the injured party also required medical treatment. When the injury failed to heal properly, or was compounded because of the doctors conduct, the injured party was barred from suing the doctor for malpractice. This was so in spite of the fact that the doctor's negligence was remote in time to the driver's and only partial compensation was received.

Given facts such as these, the conduct of the doctor was independent of the driver's. Therefore, an injured party had not *one* but *two* causes of action. Moreover, because either the driver was absolved before the full extent of injury was known or the doctor's actionable conduct occurred after the release was given, double recovery was not a possibility.

In response, several courts developed the rule that a release does not, as a matter of law, preclude a subsequent action unless it was so intended by the parties or amounts to full satisfaction. *Berlow v. New York State Thruway,* 35 A.D.2d 356, 316 N.Y. S.2d 238 (1970); *Malvica v. Blumenfeld,* 34 A.D.2d 74, 310 N.Y.S.2d 329 (1970); *Derby v. Prewitt,* 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962); *Couillard v. Charles T. Miller Hospital,* 253 Minn. 418, 92 N.W.2d 96 (1958); *Daily v. Somberg,* 28 N.J. 372, 146 A.2d 676 (1958); *McKenna v. Austin,* 134 F.2d 659 (1943). Other courts,

on similar facts, treat satisfied judgments in the same manner. *Williams v. Woodman,* 424 So.2d 611 (Ala.1982); *Vaca v. Whitaker,* 86 N.M. 79, 519 P.2d 315 (1974); *Knutsen v. Brown,* 96 N.J.Super. 229, 232 A.2d 833 (1967); *Selby v. Kuhns,* 345 Mass. 600, 188 N.E.2d 861 (1961); *Ash v. Mortensen,* 24 Cal.2d 654, 150 P.2d 876 (1944). *Contra Edmond v. Fairfield Sunrise Village,* 132 Ariz. 142, 644 P.2d 296 (1982); *Farrar v. Wolfe,* 357 P.2d 1005 (Okl.1961). Section 886 of the Restatement (Second) of Torts, reflects the decisions of these courts, and others, to not preclude as a matter of law a subsequent suit merely because the plaintiff obtained a prior judgment. Instead, the inquiry is whether the plaintiff *in fact* received compensation for all injuries. If the plaintiff did not, then a second suit could proceed. Of course, as long as there is an independent cause of action or a subsequent injury, this rule would have force in other factual settings.

■ The facts of this case, however, bear little resemblance to the scenario outlined above. First, the conduct of the manufacturer is alleged to have occurred prior to and concurrently with the doctor's. No actionable conduct on defendants' behalf is alleged to have occurred after December 1976, the month Mrs. Garner stopped taking birth control pills. Second, Mrs. Garner suffered a single, indivisible injury. Under South Carolina law, either tortfeasor is liable for the entire loss sustained even though the acts of one concurred or combined with those of another to produce the result. This principle of liability, quite distinct from liability for joint or concerted action, rests upon the simple rule that a defendant is liable for all consequences proximately caused by his wrongful conduct. No actionable injury is alleged to have occurred after July 7, 1981, the day satisfaction was received. Third, even though plaintiffs concede credit to the extent of previous judgments, any recovery which exceeds $210,000.00 is double compensation. The injuries which form the basis of the present lawsuits are *identical* to those adjudicated and compensated in

the prior lawsuits. To put it another way, plaintiffs want two bites at the apple. The law, however, only gives them one.

Assuming, *arguendo*, that the facts of this case warrant the adoption of Section 886, comment (b), would nonetheless require this court to hold that the plaintiffs' lawsuits are precluded:

> If the adjudication of the loss has the effect of delimiting the injured party's entitlement to redress on the ground that the actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question, ... a payment in full of the judgment has the effect of satisfying in full the injured party's claim against any of the tortfeasors and there is no longer an enforceable claim. (*See* Restatement (Second) Judgments § [50], Comment d ...).[1]

Any tortious conduct of the defendants in the instant case culminated in the plaintiffs' injuries. The damages have been adjudicated and reduced to judgment. The judgment has been satisfied. The satisfaction extinguished the cause of action. Comment b to Section 886 of the Restatement (Second) of Torts and comment (d) to Section 50 of the Restatement (Second) of Judgments are in accord with this court's conclusion.

1. Comment d, § 50 Restatement (Second) of Judgments (1983) provides:

    d. *Amount of loss adjudicated.* The rule that payment, in whole or in part, by one of several obligors reduces the amount that may be obtained from other obligors also applies when the amount of the loss has been adjudicated. The adjudication of the amount of the loss also has the effect of establishing the limit of the injured party's entitlement to redress whoever the obligor may be. This is because the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question .... Therefore when a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforceable claim against any other obligor who is responsible for the same loss.

2. At the January 25th hearing, counsel for plaintiffs, who was also counsel in the previous ac-

The plaintiffs also argue that because punitive damages are not recoverable against the United States under the Federal Tort Claims Act, they should be entitled to seek them from these defendants.

▉ It is clear that the only item of damages arising from plaintiffs' injuries that has not been adjudicated is possible punitive damages.[2] In South Carolina, punitive damages do not compensate the plaintiff for any loss. Instead, they are awarded to punish the defendant and deter others who might undertake similar action. *Adams v. Hunter*, 343 F.Supp. 1284 (D.S.C. 1972); *Gilbert v. Duke Power Co.*, 255 S.C. 495, 179 S.E.2d 720 (1971). Punitive damages derive from actual damages and may only be awarded if the plaintiff recovers actual damages. *Carroway v. Johnson*, 245 S.C. 200, 139 S.E.2d 908 (1965); *Allen v. Southern Ry. Co.*, 218 S.C. 291, 62 S.E.2d 507 (1950); *Limehouse v. Southern Ry. Co.*, 216 S.C. 424, 58 S.E.2d 685 (1950); *Allen v. Atlanta & Charlotte Air Line Ry. Co.*, 216 S.C. 188, 57 S.E.2d 249 (1950); *Barnes v. Industrial Life and Health Ins. Co. of Atlanta*, 201 S.C. 188, 22 S.E.2d 1 (1942).

▉ The plaintiffs' judgments have been satisfied; they have recovered their actual losses from the United States. They

tions, twice admitted that the only damages not adjudicated were punitive damages.

> MR. GARRIS: Counsel is right concerning our complaint alleging punitive damages. Punitive damages cannot be received under the Federal Tort Claims Act. In that respect, our damages are somewhat different in this action as opposed to the other action.
> THE COURT: Is that the only difference?
> MR. GARRIS: Your Honor, that's the only difference that I can determine is in the first action we did not recover punitive damages
> ....
>
>      *    *    *    *    *    *
>
> THE COURT: Are the damages just the same in the two cases or were there allegations of—
> MR. GARRIS: Your honor, in the suit, the first suit, we did not allege shortening of plaintiff's life because that fact did not come out until trial. Judge Chapman in his order did provide damages for that element, so the damages as far as I know, other than punitive damages, are identical. [Tr. 5, 11].

cannot now sue the defendants for punitive damages. A lawsuit for punitive damages only may not proceed once the cause of action for actual damages has been extinguished, actual damages being necessary to support punitive damages. *Cook v. Atlantic Coastline Railroad*, 183 S.C. 279, 190 S.E. 923 (1937). It is, therefore,

ORDERED, that defendants' motion be granted and that summary judgment be, and the same is hereby, entered for the defendants.

AND IT IS SO ORDERED.