■ In the Matter of GRENADIER REALTY CORPORATION et al., Respondents, v PUBLIC SERVICE COMMISSION OF THE STATE OF

1. Supreme Court granted Con Ed's motion to intervene in the proceeding.

NEW YORK et al., Appellants. [630 NYS2d 588] —Peters, J. Appeal from a judgment of the Supreme Court (Torraca, J.), entered December 8, 1994 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul separate determinations of respondent Public Service Commission upholding respondent Consolidated Edison Company's denial of service to petitioners at a residential rate.

This proceeding arises out of claims alleging billing disputes brought by petitioners, customers of respondent Consolidated Edison Company of New York, Inc. (hereinafter Con Ed), for electrical service to their tenants. Petitioners contend that they purchased electrical service under an incorrect service classification and were therefore overcharged. Petitioner Grenadier Realty Corporation maintained six separate utility accounts in its own name for six directly metered residential apartments located in a building which it owned and managed. Petitioner Carol Turner maintained 12 separate utility accounts in her own name for 12 directly metered residential apartments located in a building owned by Turner's husband and managed by Turner.

By letter dated December 17, 1990, Grenadier requested Con Ed to review its utility tariff classification, requesting that the six separate accounts be reclassified retroactively from the Service Classification No. 2 (General-Small) rate (hereinafter SC-2) to the Service Classification No. 1 (Residential and Religious) rate (hereinafter SC-1) and that it be refunded the difference. Con Ed denied the request, reasoning that since the utility service was not being used directly by Grenadier, the customer of record, it was not entitled to an SC-1 reclassification. Upon appeal to the Customer Services Division of respondent Public Service Commission (hereinafter the PSC), and after a PSC informal review, the request was denied by decision dated June 4, 1991 upon a finding that the accounts were appropriately billed. Grenadier administratively appealed and the PSC issued a determination modifying the informal review officer's decision. The PSC determined, *inter alia*, that Grenadier, as landlord, was not entitled to the SC-1 rate.

As to Turner, in 1986 she requested Con Ed to review her utility tariff classification, seeking the separate accounts to be reclassified from the SC-2 rate to the SC-1 rate. Upon Con Ed's refusal, Turner filed a complaint with the Customer Services Division of the PSC. After investigation and review, the informal review officer determined, *inter alia*, that Turner was not entitled to the SC-1 rate. After an administrative appeal, the PSC affirmed.

Petitioners thereafter commenced this CPLR article 78 proceeding to annul the separate determinations denying their requests for reclassification and billing at the SC-1 rate.* Supreme Court annulled the PSC's determinations and ordered Con Ed to rebill the accounts for a period of six years prior to the date of petitioners' first complaints to Con Ed or the opening of the accounts, whichever occurred later. The PSC and Con Ed appeal.

Distilled, the issue presented is the appropriate classification of individually metered, occupied, residential apartments in a multiple dwelling held in the names of entities other than the actual occupants. "Classifications of rates and the advantages of such classifications are for the agency, not the courts, to decide" (*Matter of Dara Gardens Mgt. Corp. v State of New York Dept. of Pub. Serv.*, 97 AD2d 603, 604 [citation omitted]). If the PSC's "determination has any rational basis that would appeal to a reasonable mind, it cannot be held by the courts to be arbitrary or unreasonable" (*Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn.*, 117 AD2d 156, 160). Thus, it is by now well settled that judicial deference is given to the PSC even where the opponent presents reasonable and debatable arguments "by reason of the technical nature of ratemaking * * * and the special expertise and competence required by [the PSC]" (*supra*, at 160; *see, Matter of New York State Council of Retail Merchants v Public Serv. Commn.*, 45 NY2d 661, 672). While Supreme Court found nothing in the SC-1 tariff to support the PSC's determination that serviced apartments which were not actually occupied by the customers of record were ineligible for the SC-1 rate classification, we disagree.

Prior to October 23, 1992, as relevant here, the general applicability provision of the SC-1 tariff provided that the residential rate was available for: "Light, heat and power, when supplied directly by the Company to any single-family dwelling or building or to any individual flat or apartment in a multiple-family dwelling or building or portion thereof occupied as the home, residence or sleeping place of one or more persons * * * subject to the Special Provisions hereof." Relying solely upon this provision, Supreme Court found that petitioners were entitled to be billed at the SC-1 rate for their tenants' apartments. However, when viewing Special Provision D in effect at that time, it is clear that the terms of that provision support the interpretation by the PSC. It provides as follows: "D. ELECTRICITY WILL NOT BE SUPPLIED UNDER [SC-1], AND IT IS NOT AVAILABLE FOR EITHER RESIDENTIAL PREMISES AND USES, RELI-

---

* Supreme Court granted Con Ed's motion to intervene in the proceeding.

GIOUS PURPOSES AND USES, OR SUPPORTIVE LIVING FACILITIES AND USES: (1) Where the Company's service and supply of electric energy, under [SC-1], in or to any buildings or premises or to the owner, or to any tenant or occupant thereof, is or will be furnished otherwise than *directly to such owner, tenant or occupant as a Customer of the Company*, through the Company's individual meters, upon the individual application of such owner, tenant or occupant to the Company; and the Company's service will be supplied under [SC-1] only on condition that electric service furnished to such buildings or premises or to the owner, or to any tenant or occupant thereof, *is for his, her or its own use* and will not be remetered (or submetered), resold, assigned or, except as provided under [Special Provision A], otherwise disposed of to another or others" (emphasis supplied). Hence, pursuant thereto, the customer of record is required to occupy the residential premises and be a direct user of the utility services. Although Turner managed and Grenadier owned the respective apartments, as customers of record they were not the occupants of the premises or the direct users of the service, and thus the PSC's determination correctly concluded that they did not qualify for the SC-1 rate.

Such determination is further buttressed by the amendments to the SC-1 tariff which now provide, *inter alia*, that accounts for a customer's employees will qualify for the SC-1 rate even though the customer is not the occupant of the residential premises. Yet, in commenting upon the amendments, the Energy and Water Division of the PSC noted that the SC-1 rate "would continue to preclude instances such as a landlord being the customer of record for individually metered apartments that he, or she, makes available for residential occupancy" (Staff Mem of PSC Energy & Water Div., dated Oct. 9, 1992, at 3). Hence, contrary to the finding of Supreme Court, we find that the October 1992 amendments expanded the applicability of the SC-1 tariff rate and was not, therefore, a first-time restriction requiring the customer of record to occupy the serviced premises (*see, Matter of NRK Mgt. Corp.*, 17 NY PSC 900, 901-902).

Accordingly, we find that the PSC had a rational basis to support its determination. Since the PSC's interpretation of the tariff was not contrary to its plain language (*see, Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn.*, 195 AD2d 849, 851) and was in accordance with prior determinations of the Commissioner (*see, Matter of NRK Mgt. Corp., supra*), we reverse the judgment of Supreme Court and confirm the PSC's determination.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determination confirmed and petition dismissed.