[659 NYS2d 362]

In the Matter of AT&T COMMUNICATIONS OF NEW YORK, INC., Appellant, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 3, 1997

## APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C.,* Albany *(Francis J. Smith, Jr.,* of counsel), for appellant.

*Maureen O. Helmer,* Albany *(Cheryl L. Callahan* of counsel), for Public Service Commission of the State of New York, respondent.

*Jerome Balsam* and *Barry S. Abrams,* New York City, for New York Telephone Company, respondent.

*Roland, Fogel, Koblenz & Carr, L. L. P.,* Albany *(Keith J. Roland* of counsel), for News Transmission Service, Inc. and another, respondents.

**OPINION OF THE COURT**

SPAIN, J.

Petitioner commenced this CPLR article 78 proceeding challenging certain portions of two opinions by respondent Public Service Commission (hereinafter the PSC), the first issued June 1, 1994 (1994 Opns Public Serv Commn No. 94-14 [hereinafter Opinion 94-14]) and the second issued August 2, 1995 (1995 Opns Public Serv Commn No. 95-10 [hereinafter Opinion 95-10]). Petitioner's contention before Supreme Court was that the PSC improperly determined that respondent New York Telephone Company (hereinafter NYT) could bill petitioner for charges associated with NYT's "976" Mass Announcement Network Service (hereinafter MAS) pursuant to Tariffs 913 and 900 which were filed by NYT with the PSC and approved by the PSC.* MAS is a service provided by NYT whereby information providers can record messages regarding, *inter alia*, time, weather, lottery results, sports updates or financial news for access by callers who dial certain "976" prefix numbers in the 212, 718, 516 and 914 area codes.

New York State is divided into six geographic telephone service delivery regions known as "Local Access and Transport Areas" (hereinafter LATAs); the MAS facilities are located in the Metropolitan New York LATA. Calls originating and ending within LATAs (hereinafter intraLATA calls) are handled by local telephone companies such as NYT. Calls originating in one LATA and ending in another LATA (hereinafter inter-LATA calls) are transmitted by the long-distance networks of interexchange carriers (hereinafter IXCs) such as petitioner, Sprint and MCI. When an IXC transports a call to a number in a particular LATA, it must pay an access charge to the local phone company for the use of the local company's facilities. The basic access charges which an IXC pays to NYT are set forth in Tariff 913, which also states that IXCs will be billed by NYT for additional charges for "calls to certain community information services, for which rates are applicable under Telephone Company exchange service tariffs, e.g., 976 (DIAL-IT) Network Services". Only Tariff 900 sets forth the payment arrangement for MAS calls; it authorizes NYT to bill and collect from the calling party an applicable MAS rate, a portion of which NYT keeps and the remainder of which it remits to the information provider. However, if a caller is located outside

---

* A tariff is a published document setting forth rates, schedules, terms and conditions under which a utility renders service to its customers.

the Metropolitan New York LATA, only the IXC, as the long-distance carrier, can transmit the long-distance call and only the IXC can bill the caller for services provided. Since 1986, NYT has billed petitioner for MAS calls transmitted over petitioner's network. Petitioner has paid the basic access charges for all calls, including MAS calls, which terminate in the Metropolitan New York LATA. However, petitioner has refused to pay the additional charges for MAS calls because the schedule of MAS charges is only set forth specifically in Tariff 900 which petitioner contends is applicable only to intraLATA or local calls. Petitioner has also refused to bill its customers for the MAS charges.

In Opinion 94-14 the PSC held that pursuant to Tariff 913, IXCs who elect to transmit interLATA MAS calls on their networks are required to pay the additional MAS charges set forth in Tariff 900. The PSC also held that IXCs had the option of blocking (not transmitting) MAS calls. Several parties petitioned for reconsideration and the PSC, in Opinion 95-10, denied reconsideration and adhered to so much of Opinion 94-14 which held that IXCs were obligated to pay MAS charges; the PSC also confirmed and clarified IXCs' legal right to block MAS calls. Thereafter, in this CPLR article 78 proceeding, Supreme Court determined that the PSC's determinations were rational and dismissed the petition. Petitioner appeals.

■ We affirm. Initially, we reject the contention by two of the intervenor-respondents that this proceeding is barred by the Statute of Limitations. Respondents News Transmission Service, Inc. and Black Radio Network, Inc. claim that the relevant provision of Tariff 913, which incorporated the MAS charges set forth in Tariff 900, became effective in 1984 and became permanent in 1986. They assert that petitioner should have challenged the validity of Tariff 913 within four months of the PSC's approval of that tariff and that petitioner's failure to bring such a timely challenge precludes any subsequent effort to have the tariff ruled invalid (see, CPLR 217). However, said respondents' reliance on *Matter of Community Maternity Serv. v Gioia* (151 AD2d 808) in support of their position is misplaced; there the petitioners were specifically challenging a tariff and the PSC's decision to approve that tariff. Here, petitioner's challenge was directed at a decision involving the interpretation and application of the tariffs in question by the PSC and not the PSC's approval of either tariff; therefore, the within proceeding did not need to be commenced within four months of the approval of Tariff 913.

◼ Moving next to petitioner's contentions, we reject its assertion that this Court should not defer to the technical expertise of the PSC in this particular case. We are constrained to afford deference to the expertise of an administrative agency "[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459). In our view, the key questions raised by petitioner from the outset of this proceeding confirm that "fair consideration of these issues cannot be had without reference to extensive information contained in the record on various technical matters and concerning customary industry practices" (*Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn.*, 108 AD2d 266, 269). It is well settled that tariff interpretations fall within the particular expertise of the PSC which is entitled to deference (*see, Matter of Grenadier Realty Corp. v Public Serv. Commn.*, 218 AD2d 883, 885; *Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn.*, 195 AD2d 849; *see also, Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn.*, 117 AD2d 156, 160; *Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn., supra*, at 269-270). In light of the respect afforded the PSC in cases such as this, together with the broad powers all State agencies are given to construe the statutes and regulations which they administer, the PSC's determination should be upheld "unless such construction is unreasonable or irrational" (*New York Pub. Interest Research Group v Williams*, 127 AD2d 512, 513; *see, Matter of Howard v Wyman*, 28 NY2d 434, 438; *Rose v Elmira Hous. Auth.*, 224 AD2d 43, 45, *lv denied* 88 NY2d 806; *Matter of Grenadier Realty Corp. v Public Serv. Commn., supra*, at 885).

Petitioner asserts that it was inappropriate, in light of both Public Service Law § 92 and the PSC's own regulations, to incorporate by reference in a tariff rates set forth in a document outside of that tariff. Public Service Law § 92 requires that every telephone tariff "state separately all charges" (Public Service Law § 92 [1]) and the regulations of the PSC require that each service classification and rate table "be complete in itself" (16 NYCRR 630.25 [a]). Petitioner argues that Tariff 913 should have specifically stated all charges on its face and that it could not simply refer to charges set forth in Tariff 900, because such incorporation by reference resulted in charges which were not specifically set forth within Tariff 913. The

PSC stated in Opinion 94-14 that "[t]he incorporation-by-reference tariffing violates no law or rule, since all tariff charges are clearly set forth, and not hidden. To hold otherwise would invalidate numerous other tariffs, including some of [petitioner's] own." Here, the Public Service Law and the PSC's regulations have been construed by the agency responsible for their administration (see, Matter of Howard v Wyman, supra, at 438; New York Pub. Interest Research Group v Williams, supra, at 513). When Tariffs 913 and 900 are read together they clearly indicate that IXCs which transmit MAS calls can expect to be billed by NYT the same amounts which NYT would have been able to collect from the calling party if the calls had been made within the Metropolitan New York LATA. In our view, the PSC's determinations permitting incorporation by reference are rational.

We also reject petitioner's contention that the clear language of Tariff 900 does not impose MAS charges on IXCs because an IXC is not a "calling party". Notably, the PSC found that a determination that the IXC is not the "calling party" is not a bar to these charges and also found that NYT's tariff clearly states that by delivering calls to "976" MAS numbers an IXC makes itself liable for MAS charges because, by delivering the calls, the IXCs are in effect requesting the service on behalf of their callers (see, Matter of Grenadier Realty Corp. v Public Serv. Commn., supra; Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn., supra, at 850-851). The PSC's rejection of petitioner's "calling party" argument was well within its technical expertise and both reasonable and rational (see, Kurcsics v Merchants Mut. Ins. Co., supra, at 459; Matter of Howard v Wyman, supra, at 438).

Finally, we reject petitioner's contention that the PSC has usurped its management prerogatives. Petitioner claims that it made a business decision not to offer MAS service, not to participate in the MAS program and not to be the billing and collection agent for NYT for the MAS program. Notably, in a 1991 interoffice memorandum, petitioner's Access Vice-President acknowledged that petitioner had the practical ability to block MAS calls as well as to recover the costs of transmitting the calls from its customers yet recommended that petitioner should not block such calls because petitioner did not need any adverse publicity nor did it want to lose the revenue. Accordingly, the record amply supports the conclusion that petitioner freely made a business decision not to block MAS calls and that the PSC did not usurp petitioner's

management prerogatives. Any suggestion by petitioner that it was uncertain as to its legal authority to block MAS calls is disingenuous, especially in light of the 1991 memorandum and petitioner's right to seek declaratory relief from the outset (*see*, State Administrative Procedure Act §§ 204, 205).

We have considered petitioner's remaining contentions and find them to be without merit.

MIKOLL, J. P., CREW III, CASEY and CARPINELLO, JJ., concur.

Ordered that the judgment is affirmed, without costs.