[667 NYS2d 793]

In the Matter of GLENS FALLS COMMUNICATION CORPORATION, Appellant, v NEW YORK STATE PUBLIC SERVICE COMMISSION et al., Respondents.

Third Department, January 15, 1998

## APPEARANCES OF COUNSEL

*DeGraff, Foy, Holt-Harris & Kunz, L. L. P.,* Albany *(Robert J. Rock* and *Jonathan Federman* of counsel), for appellant.

*Maureen O. Helmer,* Albany *(Lawrence G. Malone* and *Maureen J. McCauley* of counsel), for New York State Public Service Commission, respondent.

*Deborah Haraldson,* New York City, for New York Telephone Company, respondent.

## OPINION OF THE COURT

CARDONA, P. J.

At all times relevant to this appeal, petitioner operated as a small long distance interexchange carrier (hereinafter IXC) purchasing interstate and intrastate access from respondent New York Telephone Company (hereinafter NYT) for the purpose of providing originating and terminating long distance telephone service to its customers.[1] Under its arrangement with NYT, petitioner purchased Feature Group B switched access service. NYT billed petitioner for this service pursuant to the terms of its Tariff 913 (hereinafter the tariff), which had been filed with and approved by respondent Public Service Commission (hereinafter the PSC).[2]

Because the cost of Feature Group B switched access service was based upon the jurisdiction of the calls and NYT did not have the technological capability to independently ascertain this information, petitioner was required under the terms of the tariff to furnish NYT with a breakdown of calls which were interstate, intrastate interLATA[3] and intrastate intraLATA. In particular, petitioner was required to file quarterly jurisdictional reports with NYT specifying the percentage of interstate usage (hereinafter PIU), based upon the

---

1. Subsequent to the events providing the basis for this CPLR article 78 proceeding, petitioner filed a petition in bankruptcy.

2. "A tariff is a published document setting forth rates, schedules, terms and conditions under which a utility renders service to its customers" (*Matter of AT&T Communications v Public Serv. Commn.,* 231 AD2d 155, 157, n).

3. "LATA" is the acronym for "local access and transport area". There are six geographic telephone service delivery regions known as LATAs located within New York State (*see, Matter of AT&T Communications v Public Serv. Commn., supra,* at 157).

ratio of interstate usage to total usage, and the percentage of local usage (hereinafter LUP), based upon the ratio of intraLATA usage to intrastate usage.

Due to the fact that petitioner only serviced customers within NYT's Albany LATA and all calls that terminated to petitioner's customers necessarily originated within NYT's Albany LATA, all terminating access provided by NYT to petitioner was intraLATA, as opposed to the more expensive interLATA or interstate access. Under the methodology set forth in the tariff, however, this distinction was not taken into consideration and resulted in petitioner providing NYT with incorrect data regarding its PIU and LUP between April 1988 and March 1994 and causing NYT to overcharge petitioner during this time period.

By letter dated September 28, 1993, petitioner notified NYT of the billing error and requested a credit which was refused. Thereafter, petitioner disputed the methodology for calculating NYT's access charges and, on March 1, 1994, requested NYT's assistance in computing such charges given its unique circumstance of servicing only customers with terminating access within NYT's Albany LATA. Later that month, NYT provided the requested information prompting petitioner to amend its prior jurisdictional reports and to calculate its PIU and LUP for May 1994 forward to reflect the new methodology. On April 4, 1994, petitioner requested a credit from NYT in the amount of $204,000 representing overcharges for the period April 1988 through March 1994. NYT refused, indicating that the tariff prohibited retroactive adjustments.

Thereafter, petitioner filed a complaint with the PSC. Following a hearing, a Hearing Officer held, *inter alia*, that the tariff barred retroactive adjustments to NYT's past billings. On appeal, the PSC ruled, *inter alia*, that the tariff did not prohibit retroactive adjustments and that, due to petitioner's submission of inaccurate jurisdictional reports between April 1988 and March 1994, NYT's billings for access charges during this period were incorrect. The PSC further ruled, however, that petitioner was not entitled to a credit for the entire six-year period, but only to a credit for overbilling occurring two years prior to September 28, 1993, the date the issue of overbilling was first clearly brought to NYT's attention. Petitioner commenced this CPLR article 78 proceeding challenging the PSC's determination on the basis that it was arbitrary, capricious and irrational. Supreme Court dismissed the petition and this appeal by petitioner ensued.

Petitioner contends that the PSC exceeded its authority in imposing a two-year limitation period within which petitioner could recoup NYT's overcharges and that, since the tariff is silent on this issue, the six-year limitation period for contract disputes set forth in CPLR 213 (2) should have been applied. We do not agree. In *Matter of Chernow Assocs. v Public Serv. Commn.* (230 AD2d 476), we held that CPLR 213 (2) has no application to claims to recoup interest on the tax and surcharge components of past overbillings by NYT (*id.*, at 478-479). There we noted that the "petitioners' rights vis-à-vis NYT do not arise out of any contract between those parties [but] [r]ather * * * spring from the applicable rate tariff" (*id.*, at 478-479). Inasmuch as petitioner's claim to recoup NYT's overcharges, like the claims in the foregoing case, arises from the applicable rate tariff, CPLR 213 (2) is not controlling. Notwithstanding petitioner's claim, we do not find that *Matter of Capital Props. Co. v Public Serv. Commn.* (91 AD2d 726) compels a contrary conclusion.

Likewise, we do not find that the PSC exceeded its authority in imposing a two-year limitation period for the recoupment of overcharges under the circumstances presented here. It is well settled that considerable judicial deference is afforded determinations of the PSC requiring technical expertise in matters involving the "weighing [of] the potential costs associated with * * * overcharge cases and consideration of other policy factors affecting a public utility's operation and management" (*Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn.*, 195 AD2d 849, 850; *see, Matter of Chernow Assocs. v Public Serv. Commn., supra*, at 479). This is especially true with respect to the PSC's interpretation of tariffs (*see, Matter of AT&T Communications v Public Serv. Commn.*, 231 AD2d 155, 159, *supra; see also, Matter of Grenadier Realty Corp. v Public Serv. Commn.*, 218 AD2d 883; *Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn., supra*).

The fact that the tariff at issue does not specifically address the period within which NYT is obligated to refund overcharges does not deprive the PSC of the authority to impose an appropriate time period based upon an interpretation of other provisions of the tariff and a consideration of relevant policy factors. Significantly, in *Matter of Chernow Assocs. v Public Serv. Commn. (supra)*, the PSC imposed a six-year time period within which the petitioners could recover interest on the tax and surcharge components of previous overbillings in the face

of a tariff which was evidently silent on the issue. The six-year time period, however, is not necessarily applicable to all cases.

Here, the PSC imposed a two-year time period based upon a number of considerations. Initially, the PSC took into account the fact that petitioner, like other IXCs, was a regulated common carrier operating in a competitive market environment with an obligation under the tariff to provide NYT with accurate customer-based PIU and LUP data. While it acknowledged the ambiguity in the tariff language, the PSC noted that the onus was upon petitioner to seek clarification from NYT and that, absent such clarification, petitioner was responsible for the errors in the PIU and LUP data submitted. In addition, the PSC looked at the industry practice prevalent among other local exchange carriers, like NYT, under different tariffs which provide a two-year time period within which IXCs may obtain rebilling based upon corrected PIU and LUP data. The PSC also found that a two-year time period furthered the over-all intent of the tariff which was to lessen the IXCs' control over jurisdictional reports and encourage them to submit accurate data. Finally, the PSC considered the fact that the imposition of a two-year time period would lead to the expeditious future resolution of similar disputes by other IXCs.

In view of the foregoing, we conclude that the PSC engaged in the appropriate balancing analysis in deciding to impose a two-year time period within which petitioner may seek a refund of NYT's overcharges (*see, Matter of Chernow Assocs. v Public Serv. Commn.*, 230 AD2d 476, 479, *supra*). Accordingly, we agree with Supreme Court that the PSC's determination is neither arbitrary nor capricious and is supported by evidence in the record. We have considered petitioner's remaining contentions, including its claim to full interest on the overcharges, and find them to be unavailing.

MERCURE, CREW III, WHITE and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.