[685 NYS2d 816]

In the Matter of BLACK RADIO NETWORK, INC., et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, February 11, 1999

## APPEARANCES OF COUNSEL

*Roland, Fogel, Koblenz & Petroccione,* Albany (*Keith J. Roland* of counsel), and *Karen S. Burstein,* New York City, for petitioners.

*Lawrence G. Malone,* Albany (*Kevin M. Lang* of counsel), for Public Service Commission of the State of New York, respondent.

*Davis, Polk & Wardwell,* New York City (*Guy Miller Struve* of counsel), and *Sandra DiIorio Thorn,* New York City, for New York Telephone Company, respondent.

## OPINION OF THE COURT

MERCURE, J.

Petitioners are information providers (hereinafter IPs), i.e., businesses that furnish programming such as financial and news reports to the public through the telephone system. Respondent New York Telephone Company (hereinafter NYT) provides a mass announcement service (hereinafter MAS) system which enables telephone customers to hear petitioners' 57-second messages by dialing specific 976 numbers. At the time the calls at issue in this proceeding were made, the tariff end user charge to the NYT customer originating the 976 call (or, in the case of calls originating outside of the local dialing area, to the connecting interexchange carrier) was 36 cents per call, of which NYT received 24 cents and the IP received 12 cents. In 1990, petitioners became aware of a means of utilizing volume discount dialing services such as AT&T's MEGACOM service and NYT's WATS service to originate calls to its own 976 numbers for as little as 3.5 cents per minute, thereby permitting petitioners to actually make a profit of approximately 8 cents for each self-generated call they made. Utilizing automated dialing equipment, petitioners began making an extraordinarily high number of calls (alleged to have exceeded 20,000 calls per day) to their own 976 numbers with the expectation that NYT would pay them the 12 cents per call mandated by its tariff.

In late 1992, NYT complained that petitioners' MEGACOM-WATS calls to their own 976 numbers constituted "call pump-

ing", a practice that enables an IP to inflate its call tally and resulting profit, and refused to collect from AT&T for petitioners' "pumped" MAS calls or to pay petitioners the 12 cents per call that the tariff requires.[1] Petitioners filed two separate complaints with respondent Public Service Commission (hereinafter the PSC) seeking a determination that their "call pumping" practices were not improper and that they were entitled to be paid their share of the MAS fees for their own calls. Petitioners offered two contradictory explanations for their conduct. First, they described the call-pumping scheme as a "testing program" and, second, they characterized the program as a legitimate "opportunity for arbitrage". Ultimately, the PSC agreed with NYT's position, finding that petitioners were "seek[ing] to make a profit without providing information" and that their "activities represented an abuse of the 976 MAS tariff". The agency reasoned: "The MAS service is one by which 'telephone users may * * * obtain a subscriber provided announcement of up to 57 seconds * * *.' There is nothing in the 976 MAS tariff which would suggest that IPs should be allowed to obtain revenues not just for the application contemplated by the MAS tariff (that of providing information), but also by the usage of automatic dialing equipment to access their numbers. In the latter case the essential purpose of the MAS tariff, the provision of information, is not met." The PSC also noted that NYT had not collected from AT&T or any other potential payer for petitioners' calls and that the tariff did not require NYT to pay IPs for calls to their 976 numbers unless and until it had been paid. On rehearing, the PSC adhered to its prior decision.

In June 1997, petitioners brought the present CPLR article 78 proceeding against NYT and the PSC to challenge the PSC's initial ruling as well as its determination on rehearing. The petition alleged that NYT is obligated to bill and collect from calling parties using the MAS service and that it had violated its contractual and fiduciary duties when it failed to bill and collect for petitioners' self-generated calls to their 976 numbers. The petition further alleged that the PSC's determinations

---

1. In the early 1990's, AT&T, the carrier that delivered petitioners' calls to NYT's MAS system, had refused to pay its MAS bills and, in fact, took the position that it was not obligated to pay for its customers' use of NYT's MAS system. Respondent Public Service Commission rejected AT&T's position in a ruling that was subsequently upheld by this Court (*Matter of AT&T Communications v Public Serv. Commn.*, 231 AD2d 155, *lv denied* 91 NY2d 803). Nonetheless, NYT has refused to bill and collect from AT&T for petitioners' MAS calls.

that NYT was not required to pay petitioners for "pumped" calls and was not obliged to collect the tariff rate from the carrier were "erroneous as a matter of law, arbitrary, capricious, irrational, and an abuse of discretion" and were not supported by substantial evidence. After rejecting NYT's claim that the petition failed to state a cause of action, Supreme Court transferred the matter to this Court pursuant to CPLR 7804 (g) to determine the substantial evidence question.[2]

We conclude that the PSC acted lawfully and rationally in determining that the payment requirements of the MAS tariffs do not apply to an IP's self-generated calls. As a general rule, courts should defer to the PSC on questions involving that agency's special expertise (*see, e.g., Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459; *Matter of AT&T Communications v Public Serv. Commn.*, 231 AD2d 155, 159, *supra*). Questions requiring the interpretation or application of a tariff often fall within that category (*see, e.g., Matter of AT&T Communications v Public Serv. Commn., supra*, at 159; *Matter of Grenadier Realty Corp. v Public Serv. Commn.*, 218 AD2d 883, 885; *Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn.*, 195 AD2d 849). Nonetheless, even where a tariff is involved, the courts may scrutinize the PSC's determination to ensure that it is not contrary to the tariff's plain language or otherwise irrational and unreasonable (*see, e.g., Matter of Bronxwood Home for the Aged v Public Serv. Commn.*, 218 AD2d 882).

Here, although the MAS tariff contains no express exception for self-generated or "pumped calls" or those made for other than the tariff's primary purpose, it cannot be logically questioned that the practice of "call pumping" constitutes an egregious and cynical misuse of the MAS system. Given the availability of automatic dialing systems and the rate structure's discounts for high volume callers through the WATS system, under the tariff schedule in effect during the relevant time period,[3] an IP that was willing to manipulate the system could make virtually unlimited profit—at NYT's expense—

---

**2.** Inasmuch as the dispositive question is whether the PSC's decision was arbitrary and capricious or irrational and not whether it was supported by substantial evidence, Supreme Court clearly erred in transferring the proceeding to this Court (*see*, CPLR 7804 [g]). In furtherance of judicial economy, however, we shall dispose of the petition on the merits.

**3.** NYT's tariff was amended in December 1992 so as to explicitly provide that it had no obligation to make any remittance for pumped calls such as those involved here. As the PSC correctly observed, the addition of this clarifying amendment does not preclude the conclusion that "pumped" calls

without providing any accompanying service. Under these circumstances, the PSC's choice to intervene by denying payment at the tariff rate for "pumped" calls strikes us as entirely appropriate.

Although it is true that a "tariff [should be considered] 'part of the contract between the customer and the utility' * * * with all ambiguities strictly construed against the drafter" (*Lauer v New York Tel. Co.*, 231 AD2d 126, 129, quoting *Krasner v New York State Elec. & Gas Corp.*, 90 AD2d 921-922) and that the PSC lacks the authority to excuse a utility such as NYT from paying a filed tariff rate simply because such payment would produce a perceived injustice, there can be little question of the PSC's authority to interpret a tariff in such a way as to prevent egregious abuses. On previous occasions, this Court has recognized that in applying and interpreting fixed utility rate structures, the PSC is entitled to consider "policy factors" (*Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn.*, *supra*, at 851; *see*, *Matter of Estate of Morell v Public Serv. Commn.*, 25 AD2d 704, 705, *lv denied* 17 NY2d 424) and may interpret tariffs in such a way as to further their overall intent (*see*, *Matter of Glens Falls Communication Corp. v New York State Pub. Serv. Commn.* 239 AD2d 47, 51). We are also unpersuaded that, in rendering its interpretation, the PSC has created a "motivation test" in violation of the tariff's plain language. Rather than qualify the duty to make payments for 976 calls on a caller's intention, desire or motivation, the PSC has merely excluded high-volume self-generators, the one class of customers that could not possibly benefit from the information imparted by the subject MAS messages. Finally, we conclude that the PSC also rationally rejected petitioners' contention that NYT was bound to pay for their "pumped" calls because it has paid for others' "pumped" calls in the past. The previous situations in which "pumped" calls were compensated are quantitatively or qualitatively dissimilar to that presented here.

In view of the foregoing, we need not consider respondents' alternative argument that NYT had no obligation to pay petitioners for their self-generated calls because NYT had not collected *its* fees for those calls from AT&T.

were not reimbursable under the predecessor tariff (*see, e.g.*, *Matter of On-Bank & Trust Co.*, 90 NY2d 725, 731).

MIKOLL, J. P., CREW III, YESAWICH JR. and PETERS, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.