[707 NYS2d 534]

In the Matter of NEW YORK TELEPHONE COMPANY, Appellant, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 1.)

In the Matter of BLACK RADIO NETWORK, INC., et al., Appellants, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 2.)

In the Matter of ARTHUR EVANS, Individually and as a Member of the Ad Hoc Committee of Independent Information Providers, et al., Appellants, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 3.)

Third Department, May 11, 2000

### APPEARANCES OF COUNSEL

*Davis, Polk & Wardwell,* New York City (*Guy Miller Struve* of counsel), *Rogers & Wells* and *Sandra Di Iorio Thorn,* for New York Telephone Company, appellant.

*Roland, Fogel, Koblenz & Petroccione, L. L. P.,* Albany (*Keith J. Roland* of counsel), for Black Radio Network Inc. and another, appellants.

*Arthur Evans,* Floral Park, appellant *pro se.*

*Davis, Weber & Edwards, P. C.,* New York City (*Norma B. Levy* of counsel), for Arthur Evans and another, appellants.

*Lawrence G. Malone,* Albany (*Diane T. Dean* of counsel), for New York State Public Service Commission, respondent.

*Bressler, Amery & Ross,* New York City (*David F. Bauman* of counsel), for Phone Programs, Inc. and another, respondents.

*Karen S. Burstein,* New York City, for Statistical Phone Philly and others, respondents.

### OPINION OF THE COURT

Per Curiam.

Petitioners commenced these CPLR article 78 proceedings challenging certain portions of an opinion and order by respondent Public Service Commission (hereinafter PSC) issued on May 29, 1997 (1997 Opns Pub Serv Commn No. 97-7 [hereinafter Opinion 97-7]). New York Telephone Company's (hereinafter NYT)[1] mass announcement service (hereinafter MAS) provides a system that enables telephone customers to hear

---

1. NYT is a petitioner in proceeding No. 1 and a respondent in proceeding Nos. 2 and 3.

programming produced by various information providers (here-inafter IPs), such as sports scores and news reports, by dialing certain 976 numbers. Callers to these 976 numbers are as-sessed a fee by NYT, a portion of which is remitted to the IPs pursuant to PSC Tariff 900. Under this governing tariff, NYT was given the responsibility for keeping a count of the calls received by each IP, thereby providing a basis for NYT's remit-tance to the respective IPs.

Until September 1990, NYT utilized an automated system called Autrax to tabulate the number of 976 calls received by each IP. Unfortunately, Autrax was prone to counting errors, and NYT was required to manually adjust call counts. To elim-inate these counting errors, NYT transferred 976 calls from the Autrax system to the Ericsson system for the purpose of tabulating the number of calls received. That transfer, however, was attended by a variety of additional problems, resulting in IP complaints of decreased call volumes and lost revenues.

In 1993, the PSC initiated an omnibus proceeding to investigate various MAS-related issues. In the first phase, NYT and a group of IPs negotiated a settlement that was subse-quently approved by the PSC (see, 34 PSC 905 [Opn No. 94-14]). The PSC thereafter initiated phase two of the proceeding to resolve the remaining issues and, after extensive hearings, an Administrative Law Judge (hereinafter ALJ) determined that (1) NYT had been guilty of willful misconduct regarding unauthorized adjustments to Autrax call totals and gross negligence relating to the transfer from Autrax to the Ericsson system, (2) petitioner Black Radio Network, Inc. (hereinafter BRN) was not entitled to compensation for the pretransfer adjustments, and (3) NYT must offer customers the option of blocking controversial 976 calls without blocking harmless 976 service. Moreover, the ALJ recommended that NYT pay the IPs refunds totaling $25.2 million. The PSC subsequently adopted the findings of the ALJ, with a few exceptions, the most notable being that the PSC refused to award the refunds recommended by the ALJ. Rather, concluding that the "re-funds" were de facto damages which it lacked authority to award, the PSC determined that the courts should fashion the appropriate remedy.

Thereafter, NYT, BRN and petitioner Arthur Evans, indi-vidually and as a member of the Ad Hoc Committee of Inde-pendent Information Providers, initiated three separate CPLR article 78 proceedings challenging different facets of Opinion

97-7. Supreme Court subsequently consolidated the three proceedings and, in a comprehensive opinion, denied all three petitions in every respect. Petitioners appeal.[2]

■ NYT contends that the factual finding of gross negligence and willful misconduct was solely relevant to the issue of damages and, inasmuch as the PSC has no authority to award damages, it exceeded its authority in making the finding. We disagree. The PSC possesses supervisory power over all telephone companies, insuring that they comply with all provisions of the law (*see,* Public Service Law § 94 [2]). In furtherance of this legislative duty, the PSC possesses the authority "expressly delegated to it by the Legislature, or incidental to its expressed powers, together with those required by necessary implication to enable [it] to fulfill its statutory mandate" (*Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 69 NY2d 365, 369; *see,* Public Service Law § 4 [1]). To determine whether the PSC exceeded this authority, our inquiry must focus upon "a realistic appraisal" of the matter under consideration (*Matter of Consolidated Edison Co. v Public Serv. Commn.,* 47 NY2d 94, 102, *revd on other grounds* 447 US 530).

Here, PSC Tariff 900 provided exclusive control over every aspect of NYT's conduct regarding the IPs (*see, Lauer v New York Tel. Co.,* 231 AD2d 126, 129; *Lee v Consolidated Edison Co.,* 98 Misc 2d 304, 305-306), and the PSC clearly possessed jurisdiction to enforce and interpret its terms (*see, Matter of Black Radio Network v Public Serv. Commn.,* 253 AD2d 22, 25; *Matter of Glens Falls Communication Corp. v New York State Pub. Serv. Commn.,* 239 AD2d 47, 50; *Matter of AT&T Communications v Public Serv. Commn.,* 231 AD2d 155, 159, *lv denied* 91 NY2d 803). Moreover, the PSC was statutorily obligated to investigate IP complaints regarding alleged violations of the tariff (*see,* Public Service Law § 96 [3]; *Meyerson v New York Tel. Co.,* 65 Misc 2d 693, 695).

It is noteworthy that PSC Tariff 900 immunized NYT from negligent behavior and expressly absolved it of liability in the absence of gross negligence or willful misconduct. In our view, it necessarily follows that the PSC, which was charged with interpreting and enforcing the tariff, was authorized to determine if NYT's conduct rose to the level of culpability specified therein. Therefore, "a realistic appraisal" of the matter

---

**2.** Proceeding No. 2 was settled following oral argument and BRN has withdrawn its appeal.

compels the conclusion that the PSC was empowered to issue a factual determination resulting from its investigation of alleged impropriety by a utility that it was entrusted to regulate. We simply cannot envision a legislative scheme that would empower an administrative agency to investigate a matter, yet would preclude it from issuing findings of fact regarding an issue inherent therein, i.e., NYT's potential liability as defined in the governing tariff.

An administrative agency may retain jurisdiction of a matter even if the agency lacks the authority to award the relief sought (*see, Alberta Gas Chems. v Celanese Corp.*, 650 F2d 9, 13-14; *Heller v Coca-Cola Co.*, 230 AD2d 768, 770, *lv dismissed and denied* 89 NY2d 856), and we believe that NYT's reliance on *Staatsburg Water Co. v Staatsburg Fire Dist.* (72 NY2d 147) for a contrary conclusion is misplaced. There, the PSC had rendered what the Court of Appeals characterized as an "unsolicited advisory opinion made outside the context of any complaint pending before the agency," thereby depriving the defendant of an opportunity to litigate the issues (*id.*, at 153-154). Notably, the Court indicated that its reasoning may have differed if a complaint had been lodged with the PSC (*id.*, at 154). Here, a procedural ruling issued prior to the commencement of the proceeding clearly listed NYT's liability to the IPs as an issue to be resolved, and the voluminous record indicates that NYT had an adequate opportunity to litigate the issue. Accordingly, we conclude that the PSC acted within the parameters of its statutory authority in issuing findings of fact at the conclusion of the investigation regarding NYT's gross negligence and willful misconduct.

■ Next, we reject NYT's contention that it was held to a heightened standard of care. To the contrary, we conclude that, taken as a whole, the ALJ's decision properly embodied and reflected the correct legal standards. As concerns the unauthorized adjustments to the Autrax call figures, we are persuaded that the ALJ employed the correct legal standard for willful misconduct, finding that NYT knew that the Autrax figures were unreliable and that any adjustments thereto were clearly violative of the governing tariff. Rather than take corrective action, however, NYT made a conscious choice to conceal the problem and merely estimated call figures without any consideration of the effect its action would have on the IPs. In our view, this improper conduct on NYT's part amply supported a finding of willful misconduct (*see,* 103 NY Jur 2d, Torts, § 11, at 400; Prosser and Keeton, Torts § 34, at 213 [5th

ed]; *see also, Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 192 AD2d 83, 90, *affd* 84 NY2d 430).

We similarly reject the contention that the ALJ employed the improper legal standard for gross negligence, which within the context of a PSC tariff has been characterized as " 'conduct that evinces a reckless disregard for the rights of others or "smacks" of intentional wrongdoing' " (*American Tel. & Tel. Co. v City of New York*, 83 F3d 549, 556, quoting *Colnaghi, U.S.A. v Jewelers Protection Servs.*, 81 NY2d 821, 823-824). Although a "mistake or a series of mistakes alone, without a showing of recklessness, is insufficient for a finding of gross negligence" (*American Tel. & Tel. Co. v City of New. York, supra*, at 556), we view the ALJ's account of NYT's conduct in connection with the Autrax-Ericsson transfer as depicting more than a series of isolated negligent acts. Rather, the ALJ describes a unified course of reckless behavior which disregarded the rights of the IPs and, viewed in its entirety, constituted gross negligence (*see generally, Held v New York Tel. Co.*, 73 Misc 2d 582; *Warren v New York Tel. Co.*, 67 Misc 2d 348).

■ We now turn to Evans' claim. NYT offered four separate blocking options that allowed its customers to voluntarily prevent access to various pay-per-call services. Customers seeking to block certain objectionable premium services (primarily "adult" services) received a blocking option which also blocked innocuous 976 calls. The ALJ determined that this arrangement was unreasonable and recommended that NYT file a new fifth blocking option that would afford customers a clear opportunity to block controversial services without blocking harmless 976 service. The PSC initially rejected this proposal but subsequently reversed its position and ordered NYT to prospectively offer the fifth blocking option.

The present controversy centers upon the method by which the new blocking protocol was implemented. Supreme Court affirmed the PSC's determination that customers would retain their current blocking option unless the customer affirmatively chose blocking option five. Evans, however, contends that all customers should be unilaterally and automatically unblocked, regardless of the customer's wishes, and then reblocked only upon action by the customer. The thrust of Evans' contention is that the current blocking scheme works an impermissible restriction on his, as well as his customers', constitutionally guaranteed freedom of speech.

We disagree. In our view, there has been no effort on the part of the PSC to censor, restrict or ban speech in any man-

ner. Unlike the situation where a government agency seeks to control or restrict the flow of information or ideas to the public (*see, e.g.*, *Lamont v Postmaster Gen.*, 381 US 301, 306), here the public itself enjoys the untrammeled discretion to determine what it wants to hear when, if at all, it selects a call blocking option. We find the present scheme, analogous to the one available to postal service customers who wish to have objectionable materials withheld from delivery (*see*, 39 USC § 3008), to be entirely permissible. Although Evans may suffer economic harm whenever customers exercise their right not to purchase his product, "[t]he inquiry for First Amendment purposes is not concerned with economic impact; rather, it looks only to the effect of [the PSC's determination] upon freedom of expression" (*Young v American Mini Theatres*, 427 US 50, 78 [Powell, J., concurring]).

Notably, Evans has failed to demonstrate how the current blocking scheme affected his freedom of expression or how a customer seeking to utilize his service is prohibited from doing so. Evans is entirely free to market and provide his services to any subscriber willing to pay for them. However, he does not enjoy the constitutional right to force his services upon unwilling customers (*see, Rowan v United States Post Off. Dept.*, 397 US 728, 738; *People v Shack*, 86 NY2d 529, 536). In our view, it is unreasonable for Evans to insist that a customer who has already affirmatively chosen to block certain service should have to take further action to preserve that choice. To do so would suddenly expose thousands of businesses and parents to the possibility that their employees and children could suddenly and unexpectedly access certain expensive premium services without consent. Accordingly, we conclude that the blocking scheme ordered by the PSC is reasonable and in no way restricts Evans' or his customers' 1st Amendment rights.

We have reviewed Evans' remaining contentions and find them to be lacking in merit.

MERCURE, J. P., CREW III, PETERS, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.